WESTLAKE CIVIL SERVICE COMMISSION ET AL.,
APPELLANTS, *v.* PIETRICK, APPELLEE.

[Cite as *Westlake Civ. Serv. Comm. v. Pietrick,*
142 Ohio St.3d 495, 2015-Ohio-961.]

(No. 2013–0052—Submitted February 5, 2014—Decided March 17, 2015.)

PFEIFER, J.

{¶ 1} In this case, we review the application of R.C. 124.34 to the disciplinary action taken by appellant city of Westlake against its fire chief. We hold that a trial court in an R.C. 124.34(C) appeal has the authority to reduce a firefighter's punishment imposed by a civil service commission for violations of R.C. 124.34(A) and that the trial court in this case did not abuse its discretion by reducing the punishment imposed by the city.

Factual and Procedural Background

{¶ 2} Appellee, Richard O. Pietrick, began his career with the Westlake Fire Department in 1980, when the city hired him as a firefighter-paramedic. He was promoted to the position of lieutenant in 1989 and to captain in 1993. On November 23, 1994, Westlake's mayor, Dennis Clough, appointed Pietrick chief of the Westlake fire department. Clough also serves as safety director and has direct supervisory control over the fire department.

{¶ 3} Pietrick's tenure as chief was not without problems. In 2005, Westlake City Council, at the request of Pietrick and the firefighters' union, International Association of Fire Fighters, Local 1814, allotted funding for a risk assessment of the fire department. McGrath and Associates ("McGrath"), the firm conducting the assessment, issued its first report on the state of the department in November 2005. McGrath found the department to be in complete disarray. According to McGrath's report, department leaders failed to display managerial competence or to punish employees for bad behavior. McGrath recommended that Pietrick alter his management style to rectify these shortcomings.

{¶ 4} Mayor Clough met with Pietrick to discuss McGrath's report and recommendations. According to Clough, Pietrick failed to implement many changes and the state of the department continued to deteriorate. In 2006,

Mayor Clough requested that city council commission McGrath for a follow-up review of the department.

{¶ 5} McGrath issued its second report in December 2006. The review uncovered increased dysfunction between department leaders and rank-and-file employees. Due to the lack of improvement in the department as set forth in the second report, Clough ultimately asked Pietrick to resign. Pietrick declined. Clough demanded that Pietrick work on making the necessary improvements in the department as recommended in the report and required that Pietrick move his office into City Hall. Clough took an active role in working with Pietrick in correcting problems in the department.

{¶ 6} But the foregoing is all background to the specific allegations at issue in this case. On June 6, 2007, Clough was copied on a letter from the union's president to Pietrick, requesting that Pietrick discontinue his practice of using department employees—firefighter-mechanics—to work on his personal vehicles. Firefighter-mechanics are firefighters who also perform light and scheduled maintenance on fire department vehicles and work with the service department to make sure that the vehicles are fit for use. Pietrick responded a week later, copying Mayor Clough, stating that he would discontinue the practice but denying that it was a conflict of interest.

{¶ 7} Mayor Clough hired an attorney, Jonathan Greenberg of Walter & Haverfield, L.L.P., to conduct an independent investigation into the department. During his investigation, Greenberg interviewed Pietrick and three Westlake firefighter-mechanics—Todd Spriesterbach, Chris Gut, and Doug Vasi.

{¶ 8} During Pietrick's interview with Greenberg, he admitted that the mechanics had performed work on his personal vehicles while they worked for the city. Greenberg, however, found no evidence that Pietrick had intimidated or coerced the mechanics to work on his personal vehicles.

{¶ 9} Under Pietrick's management, the mechanic position changed from a relatively permanent position to an annual appointment. The mechanic position paid a 5 percent premium over the base wage for firefighters. This position had no posted requirements or standardized test, and there was no interview for the job. Greenberg wrote that, accordingly, Pietrick had "virtually unfettered discretion to make these appointments and reappointments according to whatever standards he deem[ed] fit."

{¶ 10} Spriesterbach told Greenberg that Pietrick requested free mechanical services on multiple occasions but that these "favors" never interfered with his normal work duties. Still, these requests made Spriesterbach uncomfortable. But he felt compelled to perform them in order to "keep the Chief happy to keep [his] job active every year." Pietrick also requested free mechanical services

from Chris Gut, who diagnosed a problem with Pietrick's personal lawn tractor and dismantled the tractor's engine.

{¶ 11} Greenberg included all of the aforementioned information in his 2007 report to Clough. Greenberg concluded that Pietrick's conduct was neither criminal nor violative of Ohio ethics laws but that "Chief Pietrick's actions in having his subordinates perform repairs on his personal vehicles under circumstances suggesting that he may hav[e] been taking advantage of his status as their superior officer represents extremely poor judgment * * *." Greenberg recommended that the city consider punishing Pietrick through internal remedies.

{¶ 12} On November 2, 2007, after receiving Greenberg's report, Clough issued Pietrick a notice of disciplinary action for "acts of misfeasance, malfeasance, nonfeasance, neglect of duty and failure of good behavior as provided in O.R.C. 124.34 and Westlake Civil Service Commission Rule XI." The notice was based only upon Pietrick's requests to department mechanics to work on Pietrick's vehicles. Clough demoted Pietrick from chief to firefighter and suspended him for 30 days without pay.

{¶ 13} Pietrick filed an appeal with appellant Westlake Civil Service Commission. Pietrick's appeal was heard before a hearing officer, David Pincus, on November 30, 2007.

{¶ 14} At that hearing, Acting Chief Ronald Janicek testified that the firefighters were permitted to work on hobbies when it was slow around the fire station. If firefighters worked on their cars, they were permitted to perform only "light mechanic work," like changing a headlight, but nothing that would render their cars inoperable. Firefighters commonly helped one another with minor car repairs. On several occasions, however, Pietrick requested Firefighter–Mechanic Spriesterbach to perform work on his and his family members' cars. Some of these repairs left the cars temporarily inoperable. For example, Spriesterbach replaced the drive shaft on Pietrick's mother's vehicle, which involved major disassembly of the front end of the vehicle and extensive work to the car's transmission. Spriesterbach testified that Pietrick asked him to call around for the best prices on parts and to try to get the fire department's commercial discount on the parts. Firefighter-mechanic Gut disassembled an entire lawn-tractor engine at Pietrick's request. The tractor remained in a firehouse bay for a week until Pietrick removed it. Nonetheless, department mechanics performed work for Pietrick only five or six times during his career, and Pietrick assisted in many of these repairs.

{¶ 15} Pincus issued a report and recommendation on April 30, 2008. Pincus concluded that "[t]he City had just cause to demote and suspend Fire Chief Pietrick," finding that "[t]he actions engaged in by Chief Pietrick were egregious,

substantive and reflect certain leadership failures." Pincus determined that Pietrick had violated R.C. 124.34 "for neglect of duty and failure of good behavior * * * and related City of Westlake rules and regulations." On May 8, 2008, the Westlake Civil Service Commission approved and adopted Pincus's report and recommendation.

{¶ 16} Pietrick appealed the decision to the Cuyahoga County Common Pleas Court. The trial court, noting that "[a]n appeal to a common pleas court on questions of law and fact from a municipal civil service commission's decision, taken pursuant to R.C. 124.34(C), is a trial de novo," affirmed in part and reversed in part the commission's ruling. The trial court concluded that "[t]he evidence supports a finding that appellant's conduct in having a Department Mechanic make repairs on his personal vehicles and machinery was improper" and that Pietrick had "demonstrated extremely poor judgment, reasonably drawing his leadership of the Fire Department into question."

{¶ 17} But the trial court found that the punishment imposed by the commission was excessive:

> Yet, against this instance of grossly poor judgment, other facts suggest that the discipline meted out was excessive. Firstly, there were no written work rules or policies in place that were violated. No prior complaints had been lodged. No specific directives or guidelines discouraging such practices were ever issued. Department Mechanics were not expressly told by appellant [that] they were required to perform the repairs in question. No negative work action was ever taken against any one of them for not fulfilling appellant's requests. Finally, when a complaint was formally lodged by the union, appellant readily promised to cease the practice and offered to meet with the union to discuss the matter in greater detail.

(Footnotes omitted.)

{¶ 18} Further, the trial court held that the totality of Pietrick's service in the department deserved consideration. The court pointed out that Pietrick had worked his way up the ranks during his 25–year career and had received no prior reprimands and had an unblemished record of service.

{¶ 19} Ultimately, the court concluded:

> Standing alone, the circumstances surrounding the repair of appellant's automobiles and those of his family members merited discipline. However, demotion to the lowest rank in the Department was unwarranted. While the City of Westlake may have been justified in stripping appellant

of his position as Fire Chief, reducing his rank below that of Captain was not. Under the totality of circumstances, the demotion to firefighter was unreasonable and excessive.

(Footnotes omitted.)

{¶ 20} Accordingly, the court affirmed Pietrick's 30–day suspension without pay and his demotion from the position of fire chief. However, the court reversed the demotion to the position of firefighter and ordered that Pietrick be reinstated to the rank of captain "with full seniority, back pay and commensurate benefits."

{¶ 21} All parties appealed to the Eighth District Court of Appeals, the city and its civil service commission arguing that the trial court had erred in modifying the penalty imposed by the commission, and Pietrick arguing that the trial court erred in not reinstating him to his position as fire chief. The court of appeals affirmed the judgment of the trial court.

{¶ 22} The cause is before this court upon the allowance of a discretionary appeal by the city and its civil service department. 136 Ohio St.3d 1406, 2013-Ohio-2645, 989 N.E.2d 1020.

Law and Analysis

{¶ 23} R.C. 124.34(A) describes the types of acts for which civil servants may be disciplined in Ohio. The statute states:

> No officer or employee shall be reduced in pay or position, fined, suspended, or removed, or have the officer's or employee's longevity reduced or eliminated, except * * * for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of any policy or work rule of the officer's or employee's appointing authority, violation of this chapter or the rules of the director of administrative services or the commission, any other failure of good behavior, any other acts of misfeasance, malfeasance, or nonfeasance in office, or conviction of a felony.

It is, to a large extent, a nonspecific list, setting forth types of misbehavior rather than specific prohibited acts. When disciplining Pietrick, Mayor Clough cited specific language of the statute that also appears in Westlake's civil service rules, concluding that Pietrick had "committed acts of misfeasance, non-feasance, neglect of duty and failure of good behavior." In its review, Westlake's civil service commission affirmed the mayor's decision.

{¶ 24} Pietrick, as chief of a fire department in the classified civil service, had the right under R.C. 124.34(C) to appeal the civil service commission's decision to the common pleas court on questions of law and fact:

> In the case of the suspension for any period of time, or a fine, demotion, or removal, of a chief of police, a chief of a fire department, or any member of the police or fire department of a city or civil service township, who is in the classified civil service, the appointing authority shall furnish the chief or member with a copy of the order of suspension, fine, demotion, or removal, which order shall state the reasons for the action. * * * An appeal on questions of law and fact may be had from the decision of the commission to the court of common pleas in the county in which the city or civil service township is situated.

This "appeal on questions of law and fact" is a relative rarity among civil service employees whose misdeeds allow for discipline under R.C. 124.34(A). An appeal on questions of law and fact is "a rehearing and retrial of a cause upon the law and facts." R.C. 2505.01(A)(3). R.C. 124.34 "provides two separate procedures, one for civil servants who are not policemen or firemen and another for civil servants who are police or fire officers." *Chupka v. Saunders,* 28 Ohio St.3d 325, 331, 504 N.E.2d 9 (1986) (Brown, J. concurring). R.C. 124.34(C) allows only members of city or township police and fire departments an appeal on questions of law and fact; such an appeal constitutes a trial de novo. *Chupka* at 327, citing *Cupps v. Toledo,* 172 Ohio St. 536, 179 N.E.2d 70 (1961), paragraph two of the syllabus.

{¶ 25} In a trial de novo, "the court of common pleas is empowered to ' * * * substitute its own judgment on the facts for that of the commission, based upon the court's independent examination and determination of conflicting issues of fact.' " *Id.,* quoting *Newsome v. Columbus Mun. Civ. Serv. Comm.,* 20 Ohio App.3d 327, 329, 486 N.E.2d 174 (1984). Thus, the trial court in this case was charged with "determin[ing] the facts and giv[ing] judgment disposing of the issues of law and fact as if no trial had been had in the lower tribunal." *Lincoln Properties, Inc. v. Goldslager,* 18 Ohio St.2d 154, 248 N.E.2d 57 (1969), paragraph two of the syllabus.

{¶ 26} The trial court wrote in its opinion that the commission "must prove by a preponderance of the evidence that the charges against [Pietrick] were true and the discipline taken warranted." It found that the charges were true, but that the level of discipline imposed by the commission was unwarranted.

{¶ 27} Appellants present two propositions of law to this court. The first states, "Criminal or unethical conduct is not a pre-requisite to a finding that a

public employee has engaged in neglect of duty or failure of good behavior pursuant to R.C. § 124.34." That is a statement that we do not disagree with, and, for that matter, neither does Pietrick. But the statement is irrelevant to this case. The court of appeals never stated that criminal or unethical conduct is a prerequisite to finding that a public employee has violated R.C. 124.34(A). Appellants seize upon the following paragraph from the court of appeals decision, characterizing it as making a crime or unethical behavior a prerequisite to discipline:

> Here, as previously noted, the trial court found that Pietrick demonstrated extremely poor judgment, as opposed to committing acts of misfeasance, malfeasance, nonfeasance, neglect of duty, and failure of good behavior. The trial court's finding was consistent with the determination of the outside law firm, which concluded that Pietrick had not done anything criminal and had not done anything that was likely an ethical violation. Accordingly, the trial court acted within its discretion.

2012-Ohio-6009, 2012 WL 6632921, ¶ 38.

{¶ 28} But that paragraph does not make a crime or unethical behavior a prerequisite to punishment. Pietrick *was* punished in this case: the trial court demoted him to captain and affirmed the commission's 30–day suspension. The trial court imposed a reduced punishment, but a punishment nonetheless, upon Pietrick for his behavior. The court of appeals upheld the trial court's imposition of a punishment based upon the trial court's holding that Pietrick's use of "extremely poor judgment" warranted discipline. Neither the trial court nor the appellate court held that Pietrick's wrongdoing did not fall under the type of activity covered by R.C. 124.34(A). He did receive punishment for a noncriminal act.

{¶ 29} The court of appeals reviewed the trial court's holding under an abuse-of-discretion standard. In the essential holding of the case, the court concluded:

> This court concludes that the following language of the trial court in its de novo authority amounts to a well-reasoned decision and is not unreasonable:
>
> " * * * Yet against this instance of grossly poor judgment, other facts suggest that the discipline meted out was excessive. Firstly, there were no written work rules or policies in place that were violated. No prior complaints had been lodged. No specific directives or guidelines discouraging such practices were ever issued. Department Mechanics were not

expressly told by appellant they were required to perform the repairs in question. No negative work action was ever taken against any one of them for not fulfilling appellant's requests. Finally, when a complaint was formally lodged by the union, appellant readily promised to cease the practice and offered to meet with the union to discuss the matter in greater detail." (Trial Court's Opinion and Order, Page 9.)

2012-Ohio-6009, 2012 WL 6632921, ¶ 26. That is, the court of appeals held that the trial court had not abused its discretion in taking into account certain mitigating factors and reducing the penalty imposed by the commission for a violation of R.C. 124.34(A). The appellate court imposed no requirement that a civil service employee must commit a crime or engage in unethical conduct for discipline to be imposed. Accordingly, the appellants' first proposition of law is not relevant to this case.

{¶ 30} The second proposition of law submitted by the city and commission states "Regardless of the term of art used to describe the conduct subject to discipline, the Court of Common Pleas upheld the Appellants' determination that Appellee engaged in neglect of duty and/or failure of good behavior." Again, we agree with this proposition of law, but find that it has no bearing on the outcome of this case. The trial court did find that Pietrick had engaged in activity proscribed by R.C. 124.34(A), and it never disputed the commission's conclusion that Pietrick had engaged in behavior meriting discipline. That discipline could come only from a finding of a violation of R.C. 124.34(A). The trial court did not adopt the commission's finding on the severity of Pietrick's punishment, but it did conclude that he had engaged in wrongdoing sufficient for the imposition of discipline under R.C. 124.34.

{¶ 31} This is not to say that all of the dicta in the court of appeals decision was perfectly stated. The appellate court concluded that the trial court had come to a different conclusion from the city as to the underlying offense:

> Our review of the trial court's opinion reveals that it failed to adopt the City's finding of misfeasance, malfeasance, nonfeasance, neglect of duty, and failure of good behavior, but instead substituted that finding to one of "grossly poor judgment." This, the trial court could do under its de novo review.

2012-Ohio-6009, 2012 WL 6632921, at ¶ 30. The court added, "The City suggests that there is no difference between 'grossly poor judgment' and misfeasance, malfeasance, nonfeasance, neglect of duty, and failure of good behavior. We disagree." *Id.* at ¶ 34.

{¶ 32} But for all practical purposes, there truly was no real difference between the commission and the trial court as to whether Pietrick had engaged in behavior prohibited by R.C. 124.34(A). The trial court did not attempt to create any dichotomy between its characterization of Pietrick's wrongful acts and the commission's. Instead, it simply concluded that the punishment the commission imposed for that violation was unduly harsh, given certain mitigating factors. This it could do as part of its de novo review. *Raizk v. Brewer*, 12th Dist. Clinton Nos. CA2002–05–021 and CA2002–05–023, 2003-Ohio-1266, 2003 WL 1194046, ¶ 25; *Hostiuck v. Gertz*, 1st Dist. Hamilton No. C–840521, 1985 WL 8921 (July 10, 1985).

{¶ 33} The court of appeals appeared to be under the misapprehension that the trial court was unable to modify the penalty imposed without rejecting the city's finding of "misfeasance, malfeasance, nonfeasance, neglect of duty, and failure of good behavior." The court unnecessarily addressed *Maurer v. Franklin Cty. Treasurer*, 10th Dist. No 07AP–1027, 2008-Ohio-3468, 2008 WL 2699433, ¶ 16, which holds that "[w]here the evidence supports the board's decision, the common pleas court must affirm the board's decision and has no authority to modify the penalty." The court below held that *Maurer* did not apply in this case because "[h]ere, the trial court held that the evidence did not support the City's findings and substituted its judgment when it held that at best Pietrick's conduct was 'grossly poor judgment' that required a different penalty." *Pietrick* at ¶ 31.

{¶ 34} But the real reason *Maurer* did not apply in this case is that it did not involve an R.C. 124.34(C) appeal. In *Maurer*, a county employee appealed his termination from the treasurer's office; he was not a police or fire official entitled to the benefit of R.C. 124.34(C). As the court stated in *Maurer*, the trial court's review of the administrative record in that case was not a trial de novo. *Maurer* at ¶ 15. Instead, it was an appeal brought pursuant to R.C. 119.12, and, as the court stated in *Maurer*, in an R.C. 119.12 appeal, "the common pleas court may not substitute its judgment for that of the [agency]" if the evidence supports the agency's decision. *Id.* at ¶ 16. But in this case involving an R.C. 124.34(C) appeal, the trial court did have the authority to substitute its judgment for that of the civil service commission. This includes the authority to modify the punishment imposed by the commission. Thus, although the statement in the appellants' second proposition of law is correct—the trial court did uphold the commission's determination that Pietrick had engaged in neglect of duty and/or failure of good behavior—that fact has no bearing on this case. Where the trial court differed from the commission was on the severity of the penalty.

{¶ 35} At oral argument, appellants conceded that the trial court had the authority to modify the penalty imposed by the commission. But as a subpart of

its second proposition of law, appellants argue that the trial court abused its discretion in so modifying the discipline imposed by the commission.

{¶ 36} "Under an abuse-of-discretion standard, a lower court decision will not be reversed for mere error, but only when the court's decision is unreasonable, arbitrary, or unconscionable." *Morrow v. Becker*, 138 Ohio St.3d 11, 13, 2013-Ohio-4542, 3 N.E.3d 144, ¶ 9. A reviewing court must be deferential in considering whether a lower court abused its discretion: "It is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). We agree with the appellate court that the trial court did not abuse its discretion in modifying the punishment imposed by the commission in this case. The trial court included its reasoning in its opinion, setting forth a number of points justifying its modification of the commission's penalty. This court need not say whether it would have reached the same conclusion as the trial court, but we do conclude that the trial court's determination was not unreasonable, arbitrary, unconscionable, or contrary to law.

## Conclusion

{¶ 37} A trial court, as part of its de novo review of a civil service commission's decision pursuant to R.C. 124.34(C), has the authority to modify the disciplinary measures imposed by the commission. As the court of appeals determined, the trial court in this case did not abuse its discretion in modifying the discipline imposed by the commission. Accordingly, we affirm the judgment of the appellate court.

Judgment affirmed.

O'CONNOR, C.J., and LANZINGER, KENNEDY, and FRENCH, JJ., concur.

O'DONNELL and O'NEILL, JJ., dissent.

----

**O'DONNELL, J., dissenting.**

{¶ 38} I respectfully dissent.

{¶ 39} This case concerns the standard of review that a common pleas court should apply in reviewing discipline imposed on a fire chief found to have committed misconduct in office. The Eighth District Court of Appeals erroneously concluded that an administrative appeal from a civil service commission is

subject to a trial de novo, thus permitting the common pleas court to substitute its judgment for that of the commission and to modify the discipline it imposed— even if the court upholds the commission's findings of fact and conclusions of law. Based on its view, the court of appeals affirmed the judgment of the trial court, which had affirmed the findings of misconduct made by the commission but modified the discipline imposed on Richard O. Pietrick as excessive.

{¶ 40} The administrative review of an order of the civil service commission by the common pleas court is limited to determining whether the decision is supported by reliable, probative, and substantial evidence and is in accordance with law. Here, the court determined that the evidence and law supported the commission's decision, and it had no authority to modify the discipline imposed absent a showing that the commission abused its discretion. Because the common pleas court found that the facts supported a finding that Pietrick had committed misconduct in violation of R.C. 124.34(A) and did not find an abuse of discretion in its review of the commission decision, the appellate court applied the wrong standard in affirming the court below, and therefore I would reverse the judgment of the court of appeals and reinstate the decision of the Westlake Civil Service Commission.

## R.C. 124.34(C)

{¶ 41} R.C. 124.34(C) allows any member of a city or civil service township police or fire department who is suspended, fined, demoted, or removed to appeal on questions of law and fact to the common pleas court. R.C. 2505.01(A)(3), in turn, defines "appeal on questions of law and fact" to mean "a rehearing and retrial of a cause upon the law and the facts."

{¶ 42} In *Chupka v. Saunders*, 28 Ohio St.3d 325, 327, 504 N.E.2d 9 (1986), this court described this type of appeal as "governed by the provisions of R.C. Chapter 2505 to the extent they are applicable." Quoting former R.C. 2505.21, 126 Ohio Laws 56, 58, as providing that " '[a]n appeal taken on questions of law and fact entitles the party to a hearing and determination of the facts *de novo*,' " *id.*, we concluded that the court of common pleas could, in fact, " 'substitute its own judgment on the facts for that of the commission, based upon the court's independent examination and determination of conflicting issues of fact,' " *id.*, quoting *Newsome v. Columbus Civ. Serv. Comm.*, 20 Ohio App.3d 327, 329, 486 N.E.2d 174 (10th Dist.1984).

{¶ 43} However, shortly before we issued our decision in *Chupka*, the General Assembly repealed R.C. 2505.21, effective March 17, 1987. 141 Ohio Laws, Part II, 3563, 3643. Thus, the Revised Code no longer affords a party taking an appeal on questions of law and fact a hearing de novo. For this reason, R.C.

124.34(C) permits the common pleas court to review the evidence submitted to the civil service commission, but that review is no longer a de novo proceeding, and therefore the court may not substitute its judgment for that of the civil service commission.

{¶ 44} By eliminating the right to a trial de novo, the General Assembly has aligned the appeal afforded by R.C. 124.34(C) with the appeal afforded by R.C. 124.34(B), which permits other similarly situated public employees in the classified service, including state and county public safety officers, to appeal their removal or reduction in pay to the common pleas court pursuant to R.C. 119.12.

{¶ 45} R.C. 119.12—like R.C. 124.34(C)—provides for a rehearing and retrial on the law and the facts, requiring the appeal in the common pleas court to "proceed as in the trial of a civil action," authorizing the court to admit additional evidence, and directing it to review whether the disciplinary action "is supported by reliable, probative, and substantial evidence and is in accordance with law."

{¶ 46} Further, in an administrative appeal brought pursuant to R.C. 119.12, the common pleas court is not authorized to modify a penalty that is supported by both sufficient evidence and the law, even if that penalty seems "admittedly harsh." *Henry's Cafe, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233, 236–237, 163 N.E.2d 678 (1959); *accord Maurer v. Franklin Cty. Treasurer*, 10th Dist. Franklin No. 07AP–1027, 2008-Ohio-3468, 2008 WL 2699433, ¶ 16 ("Where the evidence supports the board's decision, the common pleas court must affirm the board's decision and has no authority to modify the penalty"). In those circumstances, the statute requires the court to defer to the determination of the commission. *See Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111, 407 N.E.2d 1265 (1980) (requiring "deference to the administrative resolution of evidentiary conflicts").

{¶ 47} Thus, construing R.C. 124.34(C) in harmony with R.C. 124.34(B) and 119.12, the same procedures and scope of review apply whenever an officer or employee in the classified service—state, county, city, or township—is disciplined pursuant to R.C. 124.34(A).

{¶ 48} For these reasons, the common pleas court is not authorized to conduct a trial de novo or otherwise substitute its judgment for that of the civil service commission in an appeal brought pursuant to R.C. 124.34(C), and therefore, it must affirm the commission if its decision is supported by reliable, probative, and substantial evidence and is in accordance with law.

{¶ 49} Here, the common pleas court made such findings; it upheld the findings of fact and conclusions of law of the commission, but it errantly changed the sanction imposed by the civil service commission. Based on the state of this record, the court of appeals erred in overlooking this abuse of discretion by the trial court.

## Pietrick's Misconduct

{¶ 50} Pietrick's tenure as fire chief left the Westlake Fire Department plagued by "organizational dysfunction" and deteriorating morale among rank and file firefighters. An independent audit recommended improvements to his management of the department, but a year later, a second audit revealed that many of the needed changes had not been made, noting "the continued decline in morale and sometimes openly hostile feelings exhibited by members of the fire department" and that "[t]he firefighting staff continues to be unsupportive of the Fire Chief." Mayor Dennis Clough requested Pietrick's resignation due to the fact that "he had a year after the audit and it still appeared things were much worse," but Pietrick refused.

{¶ 51} The Westlake Fire Fighters Association then wrote a letter to Pietrick and sent a copy to the mayor, complaining of Pietrick's practice of asking firefighters to do personal work for him:

> [T]he current practice of having Union Members work on your personal vehicles can no longer be tolerated. It puts our Union membership in an uncomfortable position as you make the final decision on who maintains the Department's "Mechanics" title every year. The Union believes that this is a conflict of interest and not good for the moral[e] of [the] Fire Department.

{¶ 52} Mayor Clough ordered a separate investigation into these allegations and determined that Pietrick had "abused [his] authority by asking the appointee to do personal favors * * * [by] providing free mechanical services on [his] private vehicles." The disciplinary action taken by the mayor—stripping Pietrick of any managerial role in the department—represented the culmination of the city's review of Pietrick's tenure as fire chief, because his own misconduct had directly contributed to dysfunction and resentment in the fire department.

{¶ 53} The city demonstrated that Pietrick had sole, unfettered discretion to appoint firefighters to the mechanic positions, which paid 5 percent more than base wages. And because the appointments had to be renewed annually by the chief, appointees felt pressure to "keep the Chief happy."

{¶ 54} For instance, Pietrick asked Mechanic Christopher Gut to work on his lawn tractor. Gut testified: "He insisted I tear it apart and show him what the problem was." Over the next few days, Pietrick asked Gut whether he had called about the part needed to repair the tractor, "insinuating that he wanted [Gut] to get the part."

{¶ 55} Similarly, Mechanic Todd Spriesterbach testified that Pietrick asked for major repairs to his privately owned vehicles. Spriesterbach replaced the drive shaft on Pietrick's mother's car, the water pump and radiator on Pietrick's van, and the brakes and rotors on Pietrick's car. When Pietrick's son's Cadillac was not steering properly, Spriesterbach diagnosed a broken power steering pump; according to Spriesterbach, Pietrick purchased a new pump. Spriesterbach testified: "He told me he was going to have the car in the parking lot and that I should bring it inside and get it done. He gave me a time frame that was going to be convenient for him to come back and pick it up later that night." On other occasions, Pietrick also asked Spriesterbach to call stores for parts and tires to obtain the commercial discount offered to the fire department.

{¶ 56} Even though Pietrick's requests made Spriesterbach "uncomfortable," he complied, explaining, "[A]t that point in time my job was to do what I was told and I wanted to keep my job." And when he finally complained to the chief and refused to do any further repairs for him, Pietrick "became agitated" and retaliated by prohibiting other firefighters from performing mechanical work on their personal vehicles.

{¶ 57} The major repairs Pietrick sought on his vehicles went beyond "firefighters help[ing] firefighters," as Pietrick had characterized the situation. He could not have reasonably believed that his requests were in line with his own policy of allowing firefighters to perform minor types of mechanical work if it did not immobilize or disable the vehicle, and Assistant Fire Chief Ronald Janicek testified that other firefighters were not permitted to perform major repairs such as overhauling a car engine, replacing brakes, or changing power steering pumps during their shifts. Pietrick violated written departmental policies, including rules against creating conflicts of interest and abusing his position for personal gain, when he asked subordinate employees and appointees for major repairs to his personal vehicles.

{¶ 58} The common pleas court upheld the factual findings and legal conclusions made by the civil service commission, stating that Pietrick had expected the mechanics to "simply make repairs as if they were the neighborhood garage" and had used their subordinate position to implicitly coerce them. The court therefore lacked any basis to substitute its judgment for that of the commission and reduce the punishment imposed for this misconduct.

{¶ 59} Thus, the court of appeals erred in determining that the common pleas court had authority to conduct a trial de novo, because the General Assembly has repealed the statute authorizing a de novo proceeding. The decision of the Westlake Civil Service Commission is supported by reliable, probative, and substantial evidence and is in accordance with law. Accordingly, I would reverse

the judgment of the appellate court and reinstate the decision of the Westlake Civil Service Commission.

O'NEILL, J., concurs in the foregoing opinion.

---

John D. Wheeler, Westlake Director of Law, and Robin R. Leasure, Assistant Director of Law, for appellants.

Diemert & Associates Co., L.P.A., Joseph W. Diemert Jr., Thomas M. Hanculak, and Daniel A. Powell, for appellee.

Frost Brown Todd, L.L.C., Philip K. Hartmann, Yazan S. Ashrawi, and Stephen J. Smith; and John Gotherman, urging reversal for amicus curiae, Ohio Municipal League.