[Cite as *In re J.S.*, 2019-Ohio-4959.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| J.S. | : | Case No. 18CA24 |
| | : | |
| | : | DECISION AND |
| | : | JUDGMENT ENTRY |

_____

APPEARANCES:

David J. Winkelmann, Millfield, Ohio, for Appellant.

Robert W. Bright, Middleport, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} This an appeal from a judgment filed in the Juvenile Division of the Meigs County Common Pleas Court naming Appellee, D.S., as the residential custodian of the minor child, J.S., and awarding the Appellant, the child's mother, N.L., parenting time three weekends a month, along with the court's standard holiday and vacation parenting time schedule. Because the trial court's best interest determination as to the allocation of parental rights and responsibilities is supported by competent, credible evidence, and because the trial court did not abuse its discretion in the allocation of parental rights and responsibilities,

Appellant's sole assignment of error is overruled. Accordingly, the judgment of the trial court is affirmed.

FACTS

{¶2} The parties' initial involvement with the court began soon after J.S. was born on August 18, 2016. D.S. and N.L were not married at the time of the child's birth and have never since been married, however, they lived together with the child on property owned by D.S.'s grandparents in Meigs County. The Meigs County Child Support Agency filed a complaint seeking to determine the child's paternity on September 27, 2016. Because N.L. admitted D.S. was the child's father, which was also confirmed through genetic testing, a paternity order was filed on February 9, 2017. Thereafter, D.S. filed a complaint in the Juvenile Division of the Meigs County Court of Common Pleas seeking custody of the child on March 10, 2017. D.S. dismissed his complaint on March 17, 2017, but then filed another complaint seeking emergency custody of the child in November of 2017.

{¶3} It appears from the record that the emergency motion was filed after N.L. made domestic violence allegations against D.S., which ultimately led to a safety plan being implemented by Meigs County Children's Services (hereinafter "MCCS"). Part of the safety plan required N.L. to move out of the residence due to the fact that a drug screen performed indicated marijuana was in her system.

During the investigation conducted by MCCS, N.L. admitted to smoking marijuana and D.S. admitted that he provided it to her. N.L. moved out of the residence at that time and returned to Columbus, Ohio, where she was from originally. The trial court thereafter granted D.S.'s request for emergency custody on November 17, 2017 and the child has remained in his custody since that time. Temporary orders that were issued granted N.L. parenting time three weekends a month, as well as holiday and vacation time per the court's standard orders.

{¶4} Several hearings were held during the course of the proceedings below. Both D.S. and N.L. testified, along with several family members of D.S., friends of N.L., the Guardian Ad Litem (Paul Koch), and an MCCS employee. The record before us indicates that J.S. was approximately two years old at the time of the final hearing and that during the course of the proceedings was diagnosed as having an Autism Spectrum Disorder. As a result, he receives multiple therapy services, including speech, hearing and language. His services are provided locally by a team of providers from Ohio University in Athens, Ohio and from Nationwide Children's Hospital in Columbus, Ohio that comes to the region where he lives to provide services. At the time of the final hearing J.S. had weekly therapy appointments every Monday and was getting ready to start receiving therapy twice a week, instead of once.

{¶5} D.S. testified that he was currently and had always been the primary caretaker of J.S. He testified that his employer was flexible and allowed him to work around J.S.'s medical needs and appointments, and that when he needed assistance, he had a local network of family members that assisted in J.S.'s care. He also testified that J.S. is cared for by D.S.'s grandparents while he works and, thus, no one outside the family is needed to assist with J.S.'s care. D.S. testified that therapy appointments have always been weekly on Mondays but that N.L. has never attended. He also testified that since starting therapy, J.S. is improving. D.S. testified he wanted N.L.'s parenting time to be at his convenience and limited to no more than what she currently had.

{¶6} While N.L.'s testimony indicated a strong desire to be named the residential parent of her child, it was clear that N.L. did not have family support or a strong network to assist her in the care of J.S. She testified that she had found an appropriate daycare facility where therapy services could be incorporated. She also testified to her belief that the Columbus area offered better care and more services for J.S. than could be provided in rural Meigs County. She testified that she had not attended therapy appointments thus far due to D.S.'s failure to communicate with her about the dates and times, and explained that if the child were to reside with her in Columbus, she could take him for evening therapy sessions or could take time off during her lunch hour to transport him to necessary

appointments.  However, she conceded that she had not confirmed evening therapy services were available.

{¶7} Several of D.S.'s family members testified on his behalf regarding their opinion that he was the better parent and should be the primary custodian.  In particular, D.S.'s sister, Shainna Sisler, testified that J.S. was happy and progressing and had made a lot of improvements since his diagnosis.  Further, D.S.'s paternal aunt, Kellie Howes, testified that she has helped care for J.S. and that when he returns from weekend visits with his mother he does not want to be touched by women and takes a while to "warm up."  She testified that J.S. is emotionally closest to his father and does well with him because there is a stable, set schedule.

{¶8} MCCS employee, April Booth, also testified.  She testified that although N.L. tested positive for drugs when the investigation was initially started, there had been no issues since that time and neither parent posed any risk to the child.  Guardian Ad Litem, Paul Koch, testified and also filed a report.  He noted that shared parenting was not an option in light of the poor relationship of the parties.  N.L. conceded this fact in her testimony as well.  Koch testified that he had consulted with J.S.'s team of therapy providers as to the extensive therapy J.S. is receiving for his autism diagnosis.  He also testified that N.L. had failed to attend any of J.S.'s therapy appointments.  However, Koch testified that the child

appropriately interacted with both parents, that both residences were clean and well maintained, and that he did not believe either parent had any current substance abuse problems.  Nevertheless, Koch recommended in his report that the custody arrangement remain the same, but that N.L.'s parenting time should be "maximized."

(¶9) The trial court issued an eleven-page decision naming D.S. as the residential parent on October 12, 2018, after what the court described as an admittedly "difficult decision that the Court has spent weeks reviewing * * *." The Court noted that it was clear both parents loved the child, wanted to be the custodial parent and had the capability to provide for the child's needs.  However, the court further noted that shared parenting was not an option due to the "toxic relationship" between D.S. and N.L., which the court attributed to both parents equally and even included a section its decision titled "Mutually Unsavory Conduct Allegations."  In that section of its decision the court noted that both parents had made multiple accusations against one another, including stalking, sabotage, murder, narcissism and parental alienation, just to name a few.  The trial court expressly considered the testimony of the parties and their witnesses, the report and testimony of the guardian ad litem, the MCCS investigation, as well as the fact the investigation had been remedied and closed, and the child's developmental issues.

{¶10} Ultimately, the court ordered that legal custody should remain with D.S. and that N.L.'s parenting schedule should continue as previously ordered, which was three weekends a month as set forth above. In reaching its decision, the court noted that it was "significantly concerned * * * about mother's highly dramatic beliefs and opinions[,]" which included allegations that D.S. murdered someone, stalked her, had improper relations with the judge, has Munchausen by Proxy and essentially "conjured up the autism diagnosis[,]" but yet had never attended any of the child's appointments with his specialists. Thus, the trial court rejected the guardian ad litem's recommendation that N.L.'s parenting time be maximized. It is from this October 12, 2018 final order that N.L. has filed an appeal, setting forth a single assignment of error for our review.

## ASSIGNMENT OF ERROR

I.      "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT
        GRANTED CUSTODY TO THE APPELLEE AND LIMITED
        APPELLANT'S VISITATION."

## LEGAL ANALYSIS

{¶11} In her sole assignment of error, Appellant contends the trial court abused its discretion when it granted custody to D.S. and limited her visitation, or parenting time. Appellant argues the trial court predicated its decision upon four factors, which she argues was improper and constituted an abuse of discretion.

Appellee responds by arguing that the trial court's decision was supported by competent, credible evidence and thus did not constitute an abuse of discretion.

{¶12} As set forth above, J.S. was born out of wedlock to parents that never ultimately married. Further, at the time the case was filed below there had been no prior judicial decree allocating parental rights and responsibilities. Thus, N.L.'s custody of J.S. "arose by operation of law" in accordance with R.C. 3109.042, which provides that an unmarried female who gives birth to a child is the child's sole residential parent and legal custodian until another person is so designated by a court of competent jurisdiction. *Mitchell v. Manders*, 5th Dist. Morrow No. 14CA0011, 2015-Ohio-1529, ¶ 62. As noted by the trial court in its decision, in situations such as these involving initial allocations of parental rights and responsibilities as to children born to unmarried parents, the juvenile court had exclusive, original jurisdiction under R.C. 2151.23 to determine the custody of the child at issue, as he was not a ward of any other court. However, R.C. 2151.23 further provides in section (F)(1) that "the juvenile court shall exercise its jurisdiction in child custody matters in accordance with sections 3109.04 and 3127.01 to 3127.53 of the Revised Code and, as applicable, sections 5103.20 or 5103.23 to 5103.237 of the Revised Code." Of importance and relevance here, R.C. 3109.04 governs courts awarding parental rights and responsibilities and requires the best interests of the child be taken into consideration in making those

determinations. *See* R.C. 3109.04(B)(1). Furthermore, "[a]s between two parents, which is the situation here, the universally applied standard to be used in initial custody determinations is the best interests of the child." *In the Matter of A.B.*, 2019-Ohio-90, 128 N.E.3d 694, ¶ 39 (2019); citing *Boyer v. Boyer*, 46 Ohio St.2d 83, 87, 346 N.E.2d 286 (1976); *see also In re Webster II*, 4th Dist. Athens No. 92CA1559, 1993 WL 373784, *4.

{¶13} R.C. 3109.04 provides in pertinent part, as follows, regarding the best interest factors that must be considered by a trial court:

(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the

child's parents, siblings, and any other person who may

significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school,

and community;

(e) The mental and physical health of all persons involved

in the situation;

(f) The parent more likely to honor and facilitate court-approved

parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support

payments, including all arrearages, that are required of that

parent pursuant to a child support order under which that

parent is an obligor;

(h) Whether either parent or any member of the household

of either parent previously has been convicted of or pleaded

guilty to any criminal offense involving any act that resulted

in a child being an abused child or a neglected child; whether

either parent, in a case in which a child has been adjudicated

an abused child or a neglected child, previously has been

determined to be the perpetrator of the abusive or neglectful

act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i.) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is

planning to establish a residence, outside this state.

{¶14} Further, appellate courts generally review trial court decisions regarding the allocation of parental rights and responsibilities with the utmost deference. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997), *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Consequently, "a trial court's decision in a custody proceeding is subject to reversal only upon a showing of abuse of discretion." *In re A.J.*, 148 Ohio St.3d 218, 2016–Ohio–8196, 69 N.E.3d. 733, ¶ 27. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). *Accord Westlake Civ. Serv. Comm. v. Pietrick*, 142 Ohio St.3d 495, 2015–Ohio–961, 33 N.E.3d 18, ¶ 36. "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Ents., Inc.*, *supra*, at 161. An unconscionable or arbitrary decision generally means a " ' "view or action 'that no conscientious judge, acting intelligently, could honestly have taken.' " ' " *State v. Cunningham*, 113 Ohio St.3d 108, 2007–Ohio–1245, 863 N.E.2d 120, ¶ 25, quoting *State ex rel. Wilms v. Blake*, 144 Ohio St. 619, 624, 30 O.O. 220, 60 N.E.2d 308 (1945), quoting *Long v. George*, 296 Mass. 574, 579,

7 N.E.2d 149 (1937), quoting *Davis v. Boston Elevated Ry. Co.*, 235 Mass. 482, 497, 126 N.E. 841 (1920). In other words, in order to find an abuse of discretion, " 'the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.' " *Vaught v. Cleveland Clinic Found.*, 98 Ohio St.3d 485, 2003–Ohio–2181, 787 N.E.2d 631, ¶ 13, quoting *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996). *Accord Freshwater v. Mt. Vernon City School Dist. Bd. of Edn.*, 137 Ohio St.3d 469, 2013–Ohio–5000, 1 N.E.3d 335, ¶ 77; *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993) ("The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.") A decision is not unreasonable, arbitrary, or unconscionable "simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *State v. Morris*, 132 Ohio St.3d 337, 2012–Ohio–2407, 972 N.E.2d 528, ¶ 14, citing *AAAA Ents., Inc.*, *supra* 161 (stating "[i]t is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would

support a contrary result"). Thus, when applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *E.g., Savage v. Correlated Health Serv., Ltd.*, 64 Ohio St.3d 42, 55, 591 N.E.2d 1216 (1992); *Freshwater* at ¶ 77, quoting Graziano v. Bd. of Educ., 32 Ohio St.3d 289, 294, 513 N.E.2d 282 (" 'Absent an abuse of discretion on the part of the trial court, the court of appeals may not engage in what amounts to a substitution of judgment of the trial court.' ").

{¶15} In *Davis v. Flickinger*, *supra*, the court more specifically defined the standard of review that applies in custody proceedings as follows:

> Where an award of custody is supported by a substantial
>
> amount of credible and competent evidence, such an award
>
> will not be reversed as being against the weight of the evidence
>
> by a reviewing court. (*Trickey v. Trickey* [1952], 158 Ohio
>
> St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and followed.)
>
> [*Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178,
>
> syllabus].

{¶16} The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. As

we stated in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80–

81, 10 OBR 408, 410–412, 461 N.E.2d 1273, 1276–1277:

> 'The underlying rationale of giving deference to the findings
>
> of the trial court rests with the knowledge that the trial judge
>
> is best able to view the witnesses and observe their demeanor,
>
> gestures and voice inflections, and use these observations in
>
> weighing the credibility of the proffered testimony. [* * *]
>
> * * * A reviewing court should not reverse a decision simply
>
> because it holds a different opinion concerning the credibility
>
> of the witnesses and evidence submitted before the trial court.
>
> A finding of an error in law is a legitimate ground for reversal,
>
> but a difference of opinion on credibility of witnesses and
>
> evidence is not.  The determination of credibility of testimony
>
> and evidence must not be encroached upon by a reviewing
>
> tribunal, especially to the extent where the appellate court
>
> relies on unchallenged, excluded evidence in order to justify
>
> its reversal.'
>
> *Davis v. Flickinger*, *supra*, at 418–419.

{¶17} Additionally, deferring to the trial court on matters of credibility is

"crucial in a child custody case, where there may be much evident in the parties'

demeanor and attitude that does not translate to the record well." *Id.* at 419.

Furthermore, "custody issues are some of the most difficult and agonizing

decisions a trial judge must make. Therefore, a trial judge must have wide latitude

in considering all the evidence." *Id.* at 418. As the Ohio Supreme Court has

previously explained:

> In proceedings involving the custody and welfare of children
>
> the power of the trial court to exercise discretion is peculiarly
>
> important. The knowledge obtained through contact with and
>
> observation of the parties and through independent investigation
>
> cannot be conveyed to a reviewing court by printed record.

*Trickey v. Trickey*, *supra*, at 13. Thus, this discretionary standard of review does

not permit us to reverse a trial court's decision if we simply disagree with it. We

may, however, reverse a trial court's custody decision if the court made an error of

law, if its decision is unreasonable, arbitrary, or unconscionable, or if substantial

competent and credible evidence fails to support it. *Davis v. Flickinger*, *supra*, at

418–419, 421.

{¶18} As set forth above, Appellant argues the trial court improperly

predicated its decision upon four factors. Those four factors are as follows: 1) the

child's close proximity to a family support network bearing in mind that, 2) the

child had been diagnosed with autism, 3) the fact the child was receiving

healthcare needs in the area, and 4) the inability of the child's parents to get along. Despite Appellant's argument, however, it appears the trial court not only considered these four factors, but also considered the best interests of the child in accordance with the best interest factors set forth above. Furthermore, we believe the four factors Appellant cites actually fall within a best-interest analysis. For instance, the child's close proximity to family support network is directly relevant under R.C. 3109.04(F)(1)(c) and (d). Further, taking into consideration the child has been diagnosed as autistic directly bears upon R.C. 3109.04(F)(1)(e). The fact that the child's healthcare needs were being met in the area where D.S. lives is pertinent under R.C. 3109.04(F)(1)(c)(d) and (e). Finally, considering whether the parents get along is always a relevant consideration in ruling out shared parenting before deciding with which parent to place the child. Thus, to the extent the trial court's decision relied upon these four factors as Appellant argues, we find no error or abuse of discretion.

{¶19} Further, and importantly, the trial court made the following findings in support of its decision and these findings were supported by the record: 1) D.S. has provided a stable home and has a positive family support system to help him care for the child; 2) D.S.'s residence has essentially been the only home the child has known since birth; 3) D.S. has set up and taken care of all of the child's exceptional medical needs and the child's autism treatment and therapy should

remain consistent and stable; 4) despite N.L.'s desires the court will not move the child to another city which would require him to be completely uprooted and to start over with his weekly schedule, medical care, daycare, and therapy; 5) the child requires extraordinary care and needs stability; 6) N.L. lives by herself in Columbus and has identified no family that can help her with the child; and 7) D.S. makes extraordinary efforts to ensure the child attends his therapy appointments and N.L.'s employer would likely not permit the flexibility needed in the long run. Thus, despite Appellant's arguments that the trial court erred and abused its discretion in naming Appellee as the custodial parent, the trial court's decision is clearly supported by competent, credible evidence that D.S. is a suitable primary custodian of the child and that remaining in D.S.'s home is in the child's best interest.

{¶20} Furthermore, with respect to the parties' conflicting testimony regarding the "mutually unsavory" allegations against one another, as explained above the trial court was in the best position to evaluate the credibility of the witnesses who testified in this matter and deferring to the trial court on matters of credibility is crucial in child custody cases. *Davis v. Flickinger*, *supra*, at 419. *Accord In re Christian*, 4th Dist. Athens No. 04CA10, 2004–Ohio–3146, ¶ 7. The trial court expressed that although both parents had made allegations against one another, it was "significantly concerned" about N.L.'s "highly dramatic" beliefs

and opinions which included the belief that the child's father had "conjured up" his medical issues, despite the fact the child had a team of therapists providing weekly therapy which N.L. had never attended. Although this Court is mindful of the fact that N.L. claimed D.S. had failed to communicate appointment times to her, we must defer to the trial court's credibility determinations on that issue. Additionally, although this Court may question whether N.L.'s "highly dramatic" beliefs have some basis in fact, the trial court heard her testimony and ultimately determined both parents, including D.S., were capable of adequately caring for the child. As set forth above, it is not appropriate for this Court to question the trial court's credibility determinations and factual findings.

{¶21} As explained by the guardian ad litem and the trial court, and as conceded to by N.L., due to the poor or "toxic" relationship between these parents, shared parenting was not an option here. Further, because the parties live one-and-one-half hours away from each other, a split week parenting schedule was not an option either. The court had to make a ruling and it ruled in favor of not uprooting and moving the child, which it expressly stated it had major concerns about doing. In making its ruling the trial court reasoned that the child was established with his father, had a network of family support, was receiving "the most comprehensive and specialized available care," and that it was in the child's best interest to remain in the custody of D.S.

{¶22} Additionally, although the trial court did not "maximize" N.L.'s parenting time as recommended by the guardian ad litem, we note that "trial courts are not obligated to follow a guardian ad litem's recommendation." *Wolford v. Willis*, *supra*, at ¶ 21; *see also Gould v. Gould*, 4th Dist. Lawrence No. 16CA30, 2017-Ohio-6896, ¶ 57 (explaining that although guardians ad litem play important roles in evaluating the best interest of children, trial courts must be free to evaluate all of the evidence and determine the child's best interest based upon all of the evidence.). Thus, we find no error or abuse of discretion in the trial court's refusal to fully adopt the recommendation of the guardian ad litem.

{¶23} In light of the foregoing and after a thorough review of the record, it appears the judgment of the trial court was supported by competent, credible evidence and, as such, was not an abuse of discretion. Thus, we find no merit to the sole assignment of error raised by N.L. Accordingly, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT AFFIRMED.  Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court Juvenile Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hess, J.:  Concur in Judgment and Opinion.

For the Court,


BY:  _____
Jason P. Smith, Presiding Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**