[Cite as *Mallett v. Cleveland Civ. Serv. Comm.*, 2015-Ohio-5140.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102559**

**HENRY MALLETT**

PLAINTIFF-APPELLANT

vs.

**CLEVELAND CIVIL SERVICE
COMMISSION, ET AL.**

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-823882

**BEFORE:** Jones, P.J., E.T. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** December 10, 2015

**ATTORNEY FOR APPELLANT**

Stewart D. Roll
Climaco Wilcox Peca Tarantino & Garofoli Co., L.P.A.
55 Public Square, Suite 1950
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEES**

Jon M. Dileno
Ami J. Patel
Zashin & Rich Co. L.P.A.
950 Main Avenue, 4th Floor
Ernst & Young Tower
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} Plaintiff-appellant Henry Mallett appeals from the trial court's January 5, 2015 judgment entry, in which the court affirmed the decision of defendant-appellee Cleveland Civil Service Commission to terminate Mallett's employment with the city. The court found that the commission's decision was supported by reliable, probative, and substantial evidence and was in accordance with law. We reverse.

## I. Background and Procedural History

{¶2} Mallett had been employed with the city of Cleveland as a construction equipment operator in the city's department of public utilities for almost six years. In May 2013, the city terminated his employment. The city's termination letter stated that Mallett was being fired for "neglect of duty," "conduct unbecoming an employee in the public service," and "for other failure of good behavior which is detrimental to the service, or for any other act of misfeasance, malfeasance, or nonfeasance in office."

{¶3} Mallett appealed the termination to the Cleveland Civil Service Commission. Hearings were held before a referee on August 8, 2013 and September 9, 2013, and the transcripts from those hearings are part of the record. After the September hearing, the parties agreed to the opportunity to file a post-hearing brief, and the trial court set October 28, 2013, as the due date for the briefs.

{¶4} On November 7, 2013, the referee issued his report, in which he recommended the affirmance of Mallett's termination. The city's director of public utilities sustained the termination, and Mallett appealed to the Cleveland Civil Service Commission. In February 2014, the commission upheld the city's decision to terminate Mallett.

{¶5} Mallett appealed to the Cuyahoga County Court of Common Pleas under R.C. 119.12 and 124.34. The record was filed in the trial court, and after briefing, the trial court upheld Mallett's termination, finding that the Cleveland Civil Service Commission decision was supported by reliable, probative, and substantial evidence and was in accordance with law.

## II. Facts

{¶6} The incident that gave rise to Mallett's termination occurred on May 10, 2013. Late in the evening of May 9, the city's water division received a report of a water main break on Miles Road near the Bedford Heights and Solon border. The city's water pipe repair supervisor, Ray Cotton, dispatched a crew, which included Mallett, to the site. The crew arrived on site in the early morning hours of May 10. Heavy rainfall was occurring at the time. Mallett was assigned to operate a backhoe, which digs and moves debris. Mallett's foreman, Randall Barkley, was also present at the site.

{¶7} Because of the water main break and rainfall, debris, consisting primarily of gravel and rocks, had collected along the street and was blocking three lanes of traffic. Generally, it was the city's protocol to haul away such debris in dump trucks. However, because of the amount of water involved, Barkley determined that the debris was too muddy to load into a dump truck at that time. Rather, Barkley directed Mallett to collect the debris in a pile that would be picked up later after the water drained and it had dried.

{¶8} Mallet, however, dumped what he described as "half of a wheelbarrow" of debris into a nearby creek. Mallett testified that he did so because he deemed the situation to be an "emergency," and he believed it would help to clear the road, instead of having it "wash back" into the street. Mallet stopped upon being told he could not do that.

{¶9} An incident report was created after the environmental programs manager for the

city's water department determined that the debris Mallett dumped was a pollutant. According to the manager, the act of dumping debris into the creek "could" have been a violation of federal, state, and local laws. The city was neither cited nor fined for any violations, however. And when asked at oral argument whether the city self-reported the possible violation, counsel indicated it had not. Moreover, counsel also indicated at oral argument that nobody has ever previously been fired for this type of activity.

## III. Assignments of Error

I. The trial court erred in its January 15, 2015 journal entry sustaining appellee Cleveland Civil Service Commission's ("CCSC") decision to affirm appellee city of Cleveland, Ohio's ("Cleveland") decision to terminate appellant Henry Mallett's ("Mr. Mallett") employment with Cleveland by using the wrong standard of review. The trial court should have reviewed the decision de novo, without any deference to appellee CCSC's decision.

II. The trial court erred in its January 15, 2015 journal entry sustaining CCSC's decision to affirm Cleveland's decision to terminate Mr. Mallett's employment with Cleveland by ignoring Cleveland's failure to prove that its termination of Mr. Mallett's employment was supported by the charges contained in Cleveland's notice of the termination of Mr. Mallett's employment.

## IV. Law and Analysis

**Standard of Review: Trial Court**

{¶10} In his first assignment of error, Mallett contends that the trial court's review was done under the incorrect standard. According to Mallet, the trial court should have conducted a de novo review, instead of affording deference to the commission's decision. In support of his contention, Mallet cites *Ruck v. Cleveland*, 8th Dist. Cuyahoga No. 89564, 2008-Ohio-1075, and *Martinez v. Greene*, 8th Dist. Cuyahoga No. 95311, 2011-Ohio-118 ("*Martinez I*").

{¶11} *Martinez I* did hold that administrative appeals brought under R.C. 124.31 and 119.12 are subject to a de novo review at the trial court level. *Id.* at ¶ 21. But on reconsideration, the opinion was vacated and this court corrected its holding on the trial court's

standard of review, stating the following: "'In an administrative appeal under R.C. 119.12, a trial court must determine whether the decision of the administrative board is supported by reliable, probative and substantial evidence. The trial court must give due deference to the administrative resolution of evidentiary conflicts and must not substitute its judgment for that of the administrative board or agency.'" *Martinez v. Greene*, 8th Dist. Cuyahoga No. 95311, 2011-Ohio-1359, ¶ 21, quoting *Sohi v. Ohio State Dental Bd.*, 130 Ohio App.3d 414, 421, 720 N.E.2d 187 (1st Dist.1998); *see also Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 614 N.E.2d 748 (1993); *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 407 N.E.2d 1265 (1980).

{¶12} In light of the above, *Martinez I* does not advance Mallett's contention. Nor does *Ruck*. In *Ruck*, a firefighter appealed the decision to terminate his employment to the common pleas court and this court held that the trial court's review was de novo. But this court's holding was based on an exception to the deferential standard under R.C. 124.34(C) for appeals involving disciplinary actions against members of a police or fire department. The Ohio Supreme Court has recently addressed the distinction in the standards of review, stating the following: "R.C. 124.34 'provides two separate procedures, one for civil servants who are not policemen or firemen and another for civil servants who are police or fire officers.'" *Westlake Civ. Serv. Comm. v. Pietrick*, 142 Ohio St.3d 495, 500, 2015-Ohio-495, 33 N.E.3d 18, quoting *Chupka v. Saunders*, 28 Ohio St.3d 325, 331, 504 N.E.2d 9 (1986) (Brown, J., concurring). The court explained that "R.C. 124.34(C) allows only members of city or township police and fire departments an appeal on questions of law and fact; such an appeal constitutes a trial de novo." *Pietrick* at *id.*, citing *Chupka* at 327, citing *Cupps v. Toledo*, 172 Ohio St. 536, 179 N.E.2d 70 (1961), paragraph two of the syllabus.

{¶13} Rather than a de novo review in these types of appeals, the trial court is to review to

determine if the agency's order is supported by "reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12. That is the standard under which the trial court here reviewed and, therefore, Mallett's first assignment of error is without merit.

**Standard of Review: Appellate Court**

{¶14} We next consider Mallett's contention, as presented in his second assignment of error, that the trial court erred in affirming the commission's decision. We begin by stating our standard of review.

{¶15} When a court of appeals reviews a common pleas court decision in an administrative appeal, its standard of review is more limited than that employed by the common pleas court. *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). We review the common pleas court's judgment only for "questions of law." *Id.* Among the questions of law the court must decide includes the determination as to whether the common pleas court abused its discretion. *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). An abuse of discretion is more than an error of law. It connotes that the trial court's judgment was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**Trial Court's Determination an Abuse of Discretion**

{¶16} In reviewing the trial court's determination, we first reject Mallett's contention that his due process rights were violated because the referee issued his report on November 7, 2013, which was more than the allotted time for such reports under Cleveland Civil Service Commission Rule 9.40.[1]

---

[1]The rule states that the referee's report should be submitted at the conclusion of the hearing or within 14 days thereafter.

**{¶17}** At the conclusion of the second and final hearing in the case, which was held on September 9, 2013, the parties agreed to the opportunity to file a post-hearing brief, and the trial court set October 28, 2013, as the due date for the briefs. Because Mallett agreed to have the opportunity for post-hearing briefing, he cannot now assign the referee's failure to issue his report within 14 days after September 9, 2013, as error. *See Hinkle v. Cleveland Clinic Found.*, 159 Ohio App.3d 351, 367, 2004-Ohio-6853, 823 N.E. 2d 945 (8th Dist.), citing *State ex rel. Bitter v. Missig*, 72 Ohio St.3d 249, 254, 648 N.E.2d 1355 (1995). ("Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make.")

**{¶18}** Mallet agreed to having the opportunity to file a post-hearing brief, and indeed filed a brief. The referee filed his report within 14 days after the briefing due date. On this record, Mallett's due process rights were not violated.

**{¶19}** We now consider the crux of this appeal, that is, whether the trial court abused its discretion in upholding the commission's decision to terminate Mallett. We find that it did.

**{¶20}** The record supports the finding that Mallett did dump debris into the creek; his own testimony before the referee was that he did. But the record also reveals that, in his almost six years working for the city, this was an isolated event. In fact, Mallett had not previously been disciplined for any infractions.

**{¶21}** By all accounts, the city was dealing with a major situation: the water main line had burst and there was heavy rainfall. Mallett testified that he deemed the situation to be an "emergency," and it was under that circumstance that he dumped the debris into the creek, believing that it would help to clear the road, which had three lanes of traffic blocked. According to Mallett, he only dumped approximately "half of a wheelbarrow" of debris, and he

stopped when he was told he was not allowed to do that. There is no evidence in the record to dispute his contention.

{¶22} Although the dumping may have been in violation of federal, state, and local laws, the city was neither cited nor fined for any violation. And when asked at oral argument whether the city had self-reported the possible violation, counsel indicated it had not. Moreover, counsel also indicated at oral argument that nobody had ever previously been fired for this type of activity.

{¶23} Mallett's termination letter states "neglect of duty," "conduct unbecoming an employee in the public service," "failure of good behavior which is detrimental to the service," or an act of "misfeasance, malfeasance, or nonfeasance in office" as the grounds for his termination. The city's Rules of the Civil Service Commission do not define any of the above grounds. We have, therefore, reviewed case law to gain a better understanding of what would constitute any of these grounds. Upon review, we believe that this one-time event did not fall into any of the city's enumerated grounds for termination of Mallett.

{¶24} For example, this court upheld the termination of a civil servant in a situation where there had been clear multiple and ongoing violations of the civil service rules. *Wiebusch v. Cleveland Civ. Serv. Comm.*, 8th Dist. Cuyahoga No. 97714, 2012-Ohio-3953. In *Wiebusch*, the city received numerous complaints about Wiebusch, an architect, and projects on which he was involved. During its investigation, the city learned that during a nine-year period in which Wiebusch had been working for the city, he had not been a licensed architect in the state of Ohio. The city terminated Wiebusch and he sought review with the Cleveland Civil Service Commission.

{¶25} After the hearing, the referee upheld the termination, finding that the city's allegations supported it. The referee found four categories of violations: (1) projects that were

improperly handled, thus resulting in delays; (2) projects in which Wiebusch disregarded his superior's orders, thus resulting in delays;[2] (3) projects that were delayed due to Wiebusch's failure to adequately or timely communicate with his superiors; and (4) projects where Wiebusch certified documents as a licensed architect when he was not.

{¶26} The common pleas court and this court upheld the termination. This court stated:

> The renovations of Public Hall in anticipation of the Rock Hall induction ceremony provides the strongest evidence of violation of civil service rules justifying termination. The written correspondence in the record demonstrates a clear directive from Wiebusch's superiors to remove himself from the project. After this directive, Wiebusch continued to send correspondence to contractors; the Director of Parks, Recreation, and Properties * * *; and the person in charge of the project and contract administrator * * *. The emails and memos in the record demonstrate the confusion caused by these actions as well as the blatant disregard of any chain of command.

*Id.* at ¶ 24.

{¶27} This court concluded that there were "clear instances of insubordination" and Wiebusch's "decision to actively ignore his superior's directives was grounds for termination." *Id.* at ¶ 36.

{¶28} In another case, *Holmes v. Cleveland Civ. Serv. Comm.*, 8th Dist. Cuyahoga No. 93191, 2010-Ohio-76, this court upheld the termination based on the following facts. Holmes, an accountant for the city, had been in discussions with the city about a lateral transfer to another city department. However, without any prior indication, she resigned from her position with the city, effective immediately.

{¶29} The following day, the city contacted Holmes to further discuss the position in the other department. As a result of the discussion, Homes agreed to rescind her termination and

---

[2]The specific projects in this category related to the Cleveland Public Hall renovations for the Rock and Roll Hall of Fame induction ceremony.

accept the transfer position. But because of her prior resignation, there were two days that she did not work for the city and the city did not pay her for those two days.

{¶30} After receiving her paycheck, Holmes sent an email to a commissioner complaining about the shortage in her pay. In the email, she threatened her direct supervisor and another city employee, referring to a then-recent shooting that had occurred at SuccessTech Academy, a Cleveland Public School located across the street from where Holmes worked; four people were shot during the incident and the shooter fatally shot himself. Holmes maintained that the SuccessTech shooter was a "victim." The city terminated Holmes.

{¶31} The common pleas court and this court upheld the termination, with this court stating the following:

> Holmes's email was a threat designed to intimidate her superiors into paying her for the two days she did not work. The threat was especially egregious given that it was issued shortly after the SuccessTech incident occurred not far from the department's building * * *.
>
> Moreover, the city should be allowed to dismiss an employee who makes a serious threat of harm to two named employees. Although Holmes claims she did not intend the threat and that her email was misinterpreted, it was proper for the city to find the email threatening. The city is obligated to maintain a safe working environment for its employees; consequently, when such a violent threat is made to specifically named employees, termination is reasonable.

*Id.* at ¶ 26-27.

{¶32} This court further noted the city's concern that Holmes believed that the SuccessTech shooter thought of himself as a victim, and that perhaps Holmes also believed she was a victim.

{¶33} This case is in stark contrast to the cases discussed above and other cases that we have reviewed. Perhaps Mallett did not exercise the best judgment. But we are unable to find that this one isolated event, under the circumstances, rose to "neglect of duty," "conduct

unbecoming an employee in the public service," "failure of good behavior which is detrimental to the service," or an act of "misfeasance, malfeasance, or nonfeasance in office," that justified Mallet's termination.

{¶34} On this record, the trial court abused its discretion in upholding Mallett's termination. The second assignment of error is therefore sustained.

{¶35} Judgment reversed; case remanded to the trial court for reversal of the January 5, 2015 judgment entry.

It is ordered that appellant recover of appellees his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

LARRY A. JONES, SR., PRESIDING JUDGE

EILEEN T. GALLAGHER, J., CONCURS IN
PART AND DISSENTS IN PART WITH
SEPARATE OPINION;
MELODY J. STEWART, J., CONCURS IN
JUDGMENT ONLY WITH SEPARATE OPINION

EILEEN T. GALLAGHER, J., CONCURRING IN PART AND DISSENTING IN PART

{¶36} I respectfully dissent from the resolution of Mallett's second assignment of error. As acknowledged by the lead opinion, our review of a common pleas decision in an administrative appeal is limited to examining whether the trial court abused its discretion when

determining whether the commission's decision is supported by reliable, probative, and substantial evidence. *Lane v. E. Cleveland Civ. Serv. Comm.*, 8th Dist. Cuyahoga No. 93530, 2010-Ohio-2352, ¶ 23, citing *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 735 N.E.2d 433 (2000).

{¶37} In analyzing whether the common pleas court abused its discretion, it is necessary to emphasize that "the common pleas court may not substitute its judgment for that of the agency" if the evidence supports the agency's decision. In other words, "the common pleas court is not authorized to modify a penalty that is supported by both sufficient evidence and the law, even if that penalty seems 'admittedly harsh.'" *See Westlake*, 142 Ohio St.3d 495, 2015-Ohio-961, 33 N.E.3d 18, ¶ 46 (O'Donnell, J., dissenting). Thus, whether or not Mallett's termination is deemed "harsh" when compared to the facts of other termination cases in this district is irrelevant to our review of the trial court's judgment. Regardless of the one-time nature of Mallett's actions, this court is required to affirm the trial court's judgment if there is reliable, probative, and substantial evidence supporting the basis of the agency's termination.

{¶38} Applying the foregoing to the facts of this case, I disagree with the lead opinion's conclusion that Mallett's actions in this case did not rise to the level of "neglect of duty." Although "neglect of duty" is not defined in R.C. 124.34, it is understood to be the failure to perform an express or implied requirement of the job. *See In re Suspensions of Evans v. London*, 41 Ohio App.3d 59, 534 N.E.2d 378 (12th Dist.1987). In my view, the evidence before the trial court was sufficient to uphold Mallett's termination based on his failure to perform an express requirement of his job. Although the lead opinion compares Mallett's conduct to the circumstances presented in other termination cases in this district, it does not specifically address the sufficiency of the evidence supporting the termination. Instead, the lead opinion appears to

hold that Mallett's termination was not warranted because it was an isolated incident of poor judgment.

{¶39} In addressing the specific evidence supporting Mallett's termination, the concurring opinion states that there "was no basis to terminate Mallett's employment for neglect of duty" where Mallett technically followed his instructions to remove debris from the roadway when he dumped the debris into the creek. However, I believe the concurring opinion diminishes Barkley's testimony that in addition to ordering Mallett to remove the debris from the roadway, he also expressly instructed Mallett to place the debris in a pile near the hole where the repairmen were working to fix the water main break so that City dump trucks could remove the "muddy" material once it was "dry enough for them to pick it up." In my view, Mallett's act of dumping the debris into a creek was in direct contravention of the express, and rather clear, order of his superior.

{¶40} Additionally, Cotton testified at length concerning the City's long held protocol regarding the use of dump trucks to haul debris away from work sites, and the unwavering practice of never dumping work site materials into creeks or streams. Despite these standards, Mallett failed to perform the express orders of his supervisor and dumped material from the work site into a creek, an action he admitted was done without the approval of Barkley.

{¶41} Without addressing the remaining grounds for Mallett's dismissal, I would find that the trial court did not abuse its discretion in upholding the CCSC's decision to terminate Mallett's employment for neglect of duty. Accordingly, I would affirm the trial court's judgment.

MELODY J. STEWART, J., CONCURRING IN JUDGMENT ONLY:

{¶42} I agree that the court abused its discretion by upholding Mallett's termination, but do so not because the one-time nature of his actions mitigated termination as discipline, but

because Mallett's actions did not amount to neglect of duty, conduct unbecoming an employee in the public service, or failure of good behavior detrimental to the public service.

{¶43} As the lead opinion notes, the civil service statutes do not define the terms "conduct unbecoming an employee in the public service," "failure of good behavior detrimental to the public service," or "neglect of duty." This is no doubt intentional: the civil service statutes cannot specifically proscribe the entire range of conduct that might be subject to discipline. So the legislature necessarily painted with a broad brush. This does not mean however, that employers have the right to interpret those statutory terms as they desire. Words in statutes must be given their plain and ordinary meaning. *S. Euclid v. Richardson*, 49 Ohio St.3d 147, 152, 551 N.E.2d 606 (1990). What is more, statutes must be interpreted consistent with the legislature's intent and the purpose to be accomplished by the statute. *Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, ¶ 24. A "fundamental purpose" of the civil service laws and rules is to protect civil service employees from "unjust charges of misconduct or inefficiency[.]" *State ex rel. Buckman v. Munson*, 141 Ohio St. 319, 325, 48 N.E.2d 109 (1943). That statutory purpose informs the interpretation of the contested terms.

{¶44} The first basis for Mallett's termination — "neglect of duty" — is understood by the courts to be "the failure to perform an express or implied requirement of the job." *Kotch v. Munroe Falls*, 9th Dist. Summit No. 15806, 1993 Ohio App. LEXIS 1716, *4 (Mar. 24, 1993), citing *Evans v. London*, 41 Ohio App.3d 59, 534 N.E.2d 378 (12th Dist.1987). One treatise considers the concept "quite broad" and encompasses "even single acts of completely failing to perform a particular duty, sleeping or loafing on the job, being absent without permission, or being inattentive to superiors' orders." Silver, *Public Employee Discipline and Discharge*, Section 3-08(c) at 274 (3d. Ed.2005). What is clear is that the word "neglect" means the failure

to do something. In this case, Mallett was told to remove debris from a roadway. He did exactly that. While he may not have properly disposed of some of the debris, the fact remains that Mallett did not neglect a duty — at worst, he simply performed an aspect of the duty poorly. There was no basis to terminate Mallett's employment for neglect of duty.

{¶45} The second and third basis for Mallett's dismissal was that he engaged in "conduct unbecoming an employee in the public service" and "failure of good behavior detrimental to the public service." As previously mentioned, although the terms are undefined, the words "unbecoming" and "detrimental" indicate conduct that brings disrepute upon the civil service. In other words, it is conduct that would make the ordinary citizen question the civil service system or whether the employee deserves the protection of that system.

{¶46} The city makes no specific argument on appeal that Mallett's conduct was "unbecoming" a member of the civil service or that his actions were "detrimental" to the civil service. Because these are separately stated grounds for dismissal, the city cannot make these rules a basis for Mallett's dismissal and then treat them as though they did not matter on appeal. This alone is reason to find that the court abused its discretion by upholding Mallett's termination on those grounds.

{¶47} In any event, it is clear that the city had no evidence to support a finding that Mallett engaged in conduct unbecoming or detrimental to the civil service. At the heart of the city's argument in support of Mallett's dismissal was that he *potentially* violated environmental protection laws by dumping road debris into the creek. In fact, the city's brief filed with the civil service commission made no claim that any laws were violated — it offered nothing more damning than the opinion of its environmental manager that it was "likely" and "wouldn't be far-fetched" that the road debris Mallett dumped contained pollutants. Brief of City of Cleveland

at 4. That opinion was overstatement — the city concedes that Mallett's actions did not expose it to liability from the Environmental Protection Agency, and the city did not even bother to report the incident to the EPA. In short, the city terminated Mallett because he might have negligently violated environmental protection laws.

{¶48} With Mallett having broken no laws or committed no regulatory violations, he did not engage in conduct "unbecoming" a member of the civil service or "detrimental" to the civil service. To accept the city's argument that these rules were a proper basis for termination would mean that any mistake made by an employee, regardless of its gravity, could be viewed as bringing the civil service into disrepute. This is a grossly unrealistic position to take. No employee is perfect and there are times when, quite simply, honest mistakes are made. The city's position would entitle it alone to make arbitrary decisions on when employee conduct falls within the ambit of conduct unbecoming or detrimental to the civil service. That position is directly contrary to the purpose of the civil service to prevent unjust charges of misconduct or inefficiency.

{¶49} Mallett was instructed to clear debris that was obstructing several lanes of traffic. He did so. Although he was also instructed to put the debris off to the side, the act of dumping one load of debris into the creek, while admittedly wrong in hindsight, was relatively minor. This is especially so when the city has not demonstrated that Mallet's actions violated any laws and there was no public backlash resulting from what happened. That being the case, Mallet's conduct was not of such character as to bring the civil service into disrepute, nor can his actions — whether deemed a mistake or poor decision making — rise to the level of being a "failure of good behavior detrimental to public service."