[Cite as *Knight v. Cleveland Civ. Serv. Comm.*, 2016-Ohio-5133.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103104**

## LENWOOD KNIGHT

PLAINTIFF-APPELLANT

vs.

## CLEVELAND CIVIL SERVICE COMMISSION, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-10-736087

**BEFORE:** Keough, P.J., Kilbane, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** July 28, 2016

**ATTORNEYS FOR APPELLANT**

Stewart D. Roll
David M. Cuppage
Climaco, Wilcox, Peca, Tarantino & Garofoli
55 Public Square, Suite 1950
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Director of Law
Drew A. Carson
Assistant Director of Law
City of Cleveland
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114

KATHLEEN ANN KEOUGH, P.J.:

{¶1} This appeal arises from the 2009 termination of plaintiff-appellant, Lenwood Knight, from employment with the city of Cleveland. Knight was employed as a construction equipment operator since 1997 with the city's Division of Water Pollution Control, a division of the city's Department of Public Utilities. The city terminated Knight for performing and charging a city resident ("homeowner") a fee for sewer work that the city maintained should have been done by the city at no cost to the homeowner. The basis for the termination was for "being in violation of the city of Cleveland's Rules of the Civil Service Commission of the city of Cleveland and Ethics Policy and Progressive Discipline Policies," specifically, for violating (1) the city of Cleveland's Ethics Policy general standards of ethical conduct; (2) neglect of duty; (3) conduct unbecoming an employee in the public service; (4) disorderly, immoral, or unethical conduct while on duty; (5) for any other failure of good behavior that is detrimental to the service or for any other act of misfeasance, malfeasance, or nonfeasance in office; (6) solicitation or distribution in violation of city policy; and (7) dishonesty or any dishonest action.

{¶2} Knight challenged his termination by requesting a hearing before a referee. After a full evidentiary hearing and consideration of post-hearing briefs, the referee issued a report and recommendation that the Cleveland Civil Service Commission ("CCSC") uphold Knight's termination. The referee concluded that "it is apparent that

the conduct of [Knight] who attempted to obtain money for a service that should have been performed by the City at no cost constituted 'conduct unbecoming an employee in [the] public service.'"

{¶3} Following a review of the record and considering arguments from Knight and the city, the CCSC adopted the referee's report and recommendation upholding Knight's termination.

{¶4} On September 7, 2010, Knight appealed this decision to the court of common pleas. On May 21, 2015, the trial court issued its written decision affirming the CCSC's decision to uphold Knight's termination. This timely appeal followed where Knight raises five assignments of error.

## I. Transmission of the Record

{¶5} Where a municipality removes a classified employee from his employment for disciplinary reasons, a decision by the municipality's civil service commission may be appealed to the court of common pleas pursuant to R.C. 124.34, in accordance with the procedure set forth in R.C. 119.12, or pursuant to R.C. 2506.01 through 2506.04. *Walker v. Eastlake*, 61 Ohio St.2d 273, 400 N.E.2d 908 (1980); *Sutherland-Wagner v. Brook Park Civ. Serv. Comm.*, 32 Ohio St.3d 323, 512 N.E.2d 1170 (1987); *Wolf v. Cleveland*, 8th Dist. Cuyahoga No. 82135, 2003-Ohio-3261, ¶ 7; *Slusser v. Celina*, 3d Dist. Mercer No. 10-15-09, 2015-Ohio-3721, ¶ 24; *Beare v. Eaton*, 9 Ohio App.3d 142, 458 N.E.2d 895 (12th Dist.1983).

{¶6} In this case, Knight opted to appeal the CCSC decision to the common pleas court pursuant to R.C. 124.34 and 119.12. Therefore, the transmission of the CCSC record is governed by R.C. 119.12(I), which provides in relevant part,

[w]ithin thirty days after receipt of a notice of appeal from an order in any case in which a hearing is required by sections 119.01 to 119.13 of the Revised Code, the agency shall prepare and certify to the court a complete record of the proceedings in the case. Failure of the agency to comply within the time allowed, upon motion, shall cause the court to enter a finding in favor of the party adversely affected. Additional time, however, may be granted by the court, not to exceed thirty days, when it is shown that the agency has made substantial effort to comply.

{¶7} Following the receipt of Knight's notice of appeal, the city sent an email on October 4, 2010, to Knight's counsel inquiring about two documents that were missing from the CCSC file. Both of these missing filings were prepared by Knight's counsel and submitted for the benefit of Knight — (1) Knight's motion to exclude evidence submitted to the referee in 2009, and (2) Knight's post-referee hearing brief with exhibits. The city requested that Knight's counsel forward a courtesy copy of these documents so they could be included in the transmission of the CCSC record. Despite the request, these two documents were not included in the CCSC record that was filed with the trial court on October 5, 2011. However, the administrative record submitted noted that the CCSC would supplement the record with the missing documents.

**{¶8}** On October 8, 2010 and in response to the record being submitted, Knight requested the trial court to issue an order of reinstatement, back pay and benefits, fees, and costs. The basis for the request was because CCSC failed to timely prepare and file a complete and certified record with the trial court as required by R.C. 119.12(I) and *Gwinn v. Ohio Elections Comm.*, 187 Ohio App.3d 742, 2010-Ohio-1587, 933 N.E.2d 1112 (10th Dist.).

**{¶9}** On March 23, 2011, the trial court issued an order finding that the CCSC "failed to certify the record and excluded documents that would complete the record." The trial court ordered that the CCSC "certify and complete the record by March 29, 2011" or judgment would be rendered in favor of Knight. On March 29, 2011, the CCSC supplemented the record with the missing documents and with certification. Subsequently, in May 2011, the trial court denied Knight's October 8, 2010 motion for reinstatement and March 30, 2011 renewed motion for reinstatement.

**{¶10}** In this first assignment of error, Knight contends that the trial court erred by finding that the CCSC had filed a complete certified record of the proceedings in accord with the mandate of R.C. 119.12 and by failing to order reinstatement of his employment, back pay and benefits, and award of fees and costs. Specifically, Knight contends that the CCSC failed to comply with R.C. 119.12 because (1) the administrative record contains no certification that it is the complete record of the proceedings, and (2) the administrative record submitted to the trial court is not complete.

**{¶11}** The CCSC filed a supplemental administrative record with the trial court following the trial court's March 23, 2011 order to complete and certify the administrative record. Attached to the record was an affidavit by Munday Workman, supervisor of CCSC records. Workman states in her affidavit that the "attached documents are a true and accurate copy of the Administrative Record of the Civil Service proceedings in the matter of Lenwood Knight's termination."

**{¶12}** Knight argued in the trial court and now on appeal that this affidavit is insufficient because Workman's affidavit "contains no certification that the attached documents are the complete record of the proceedings, as mandated by R.C. 119.12." Knight contends that the affidavit language of "true and accurate" is not a certification to the trial court that the CCSC filed a complete administrative record. In short, Knight states that a record can be true and accurate but not complete.

**{¶13}** We rejected this exact argument raised regarding the exact language used by the exact record keeper of the CCSC in *Yachanin v. Cleveland Civ. Serv. Comm.*, 8th Dist. Cuyahoga No. 99802, 2013-Ohio-4485. In *Yachanin*, the appellant argued that the affidavit of the supervisor of CCSC records, attesting to the authenticity of the administrative record, failed to contain a certification that the agency submitted a "complete record" of the administrative hearings to the court. *Id*. at ¶ 25. This court held that "true and accurate" certification of the documents is sufficient to complete the record. *Id*. at ¶ 27, citing *McKenzie v. Ohio State Racing Comm.*, 5 Ohio St.2d 229, 215 N.E.2d 397 (1966), paragraph two of the syllabus (sufficient certification by the agency

exists under R.C. 119.12, where the agency certifies that the purported record of the proceedings is a "complete record" thereof, that any copies of material are certified to be true copies of the original matter). Furthermore, this court determined that Yachanin failed to demonstrate that he was prejudiced by the affidavit's failure to state that the true and accurate copy of the administrative record is a "complete record." *Yachanin* at ¶ 27.

**{¶14}** Accordingly, we find Workman's affidavit in this case a sufficient certification as required under R.C. 119.12. We also find that Knight has not demonstrated how he was prejudiced by the omission of the complained verbiage in the affidavit or certification.

**{¶15}** We next turn to whether the record was complete and if not, whether Knight was prejudiced by any omission. On appeal, Knight contends that the administrative record is still incomplete because it does not contain the attached exhibits to one of Knight's filings made before the referee.

**{¶16}** When Knight initially moved for reinstatement on October 8, 2010, he contended that the administrative record was incomplete because of the absence of four documents, which he attached to his motion. After the CCSC supplemented the administrative record with the documents Knight indicated were omitted and certified it was a true and accurate copy of the administrative record, Knight renewed his motion for reinstatement on March 30, 2011. In this renewed motion, he only argued that the administrative record was not "certified" as being complete. He made no assertion before the trial court that the record as supplemented was incomplete; an argument that he

now makes on appeal. Therefore, he has waived this argument on appeal; any omission could have been cured by Knight or the trial court if timely raised.

{¶17} Moreover, the exhibits that Knight now complains were omitted from the administrative record are part of the trial court record — the exhibits were attached to his motion for reinstatement. Therefore, it was not as if the trial court was without the benefit of these documents in its review of the case. Finally, a review of the purported "missing exhibits" reveals that these documents were actually included in other filings that make up the CCSC record; thus, making the CCSC record complete.

{¶18} Even if a document was omitted, the Ohio Supreme Court has held that "an agency's omission of items from the certified record of an appealed administrative proceeding does not require a finding for the appellant, pursuant to R.C. 119.12, when the omissions in no way prejudice him in the presentation of his appeal." *Lorms v. State*, 48 Ohio St.2d 153, 357 N.E.2d 1067 (1976), syllabus; *see also Arlow v. Ohio Rehab. Servs. Comm.*, 24 Ohio St.3d 153, 493 N.E.2d 1337 (1986), syllabus. In this case, no prejudice has been shown, nor can any be found, because the omitted exhibits were part of the trial court record and were found in other filings in the CCSC record.

{¶19} Therefore, we find that the affidavit submitted by Workman contained sufficient language for certification, and the administrative record was complete. Accordingly, the trial court properly denied Knight's initial and renewed motions for reinstatement, back pay and benefits, and award of fees and costs. Knight's first assignment of error is overruled.

## II. Trial Court Standard of Review

**{¶20}** In his second assignment of error, Knight contends that the trial court erred in its May 21, 2015 journal entry by using the wrong standard of review and by failing to review the decision of the CCSC de novo.

**{¶21}** Knight brought his administrative appeal pursuant to R.C. 119.12(B) and 124.34(B). He contends that appeals brought under these sections are subject to a de novo review. In support, Knight cites *Ruck v. Cleveland*, 8th Dist. Cuyahoga No. 89564, 2008-Ohio-1075, and *Martinez v. Greene*, 8th Dist. Cuyahoga No. 95311, 2011-Ohio-118 ("*Martinez I*").

**{¶22}** Recently, in *Mallett v. Cleveland Civ. Serv. Comm.*, 8th Dist. Cuyahoga No. 102559, 2015-Ohio-5140, this court addressed the application of these cases to this precise issue:

> *Martinez I* did hold that administrative appeals brought under R.C. 124.31 and 119.12 are subject to a de novo review at the trial court level. *Id.* at ¶ 21. But on reconsideration, the opinion was vacated and this court corrected its holding on the trial court's standard of review, stating the following: "'In an administrative appeal under R.C. 119.12, a trial court must determine whether the decision of the administrative board is supported by reliable, probative and substantial evidence. The trial court must give due deference to the administrative resolution of evidentiary conflicts and must not substitute its judgment for that of the administrative board or agency.'" *Martinez v. Greene*, 8th Dist. Cuyahoga No. 95311, 2011-Ohio-1359, ¶ 21, quoting *Sohi v. Ohio State Dental Bd.*, 130 Ohio App.3d 414, 421, 720 N.E.2d 187 (1st Dist.1998); *see also Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 614 N.E.2d 748 (1993); *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 407 N.E.2d 1265 (1980).
>
> In light of the above, *Martinez I* does not advance Mallett's contention. Nor does *Ruck*. In *Ruck*, a firefighter appealed the decision to

terminate his employment to the common pleas court and this court held that the trial court's review was de novo. But this court's holding was based on an exception to the deferential standard under R.C. 124.34(C) for appeals involving disciplinary actions against members of a police or fire department. The Ohio Supreme Court has recently addressed the distinction in the standards of review, stating the following: "R.C. 124.34 'provides two separate procedures, one for civil servants who are not policemen or firemen and another for civil servants who are police or fire officers.'" *Westlake Civ. Serv. Comm. v. Pietrick*, 142 Ohio St.3d 495, 500, 2015-Ohio-961, 33 N.E.3d 18, quoting *Chupka v. Saunders*, 28 Ohio St.3d 325, 331, 504 N.E.2d 9 (1986) (Brown, J., concurring). The court explained that "R.C. 124.34(C) allows only members of city or township police and fire departments an appeal on questions of law and fact; such an appeal constitutes a trial de novo." *Pietrick* at *id.*, citing *Chupka* at 327, citing *Cupps v. City of Toledo*, 172 Ohio St. 536, 179 N.E.2d 70 (1961), paragraph two of the syllabus.

Rather than a de novo review in these types of appeals, the trial court is to review to determine if the agency's order is supported by "reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12[D].

*Id.* at ¶ 11-13.

{¶23} In this case, Knight, just like Mallett, is not a member of the police or fire department; thus he is subject to the deferential standard under R.C. 119.12(D). A review of the record shows that the trial court properly reviewed Knight's administrative appeal under this deferential standard. Knight's second assignment of error is overruled.

### III. Standard of Review — Constitutional Challenge

{¶24} In his third assignment of error, Knight contends that the trial court erred in its May 21, 2015 journal entry and judgment finding that R.C. 123.34(C)'s de novo standard of review should only apply to police and fire civil service personnel, and not to him, thereby depriving him of due process and equal protection rights. Succinctly,

Knight makes a constitutional challenge to R.C. 124.34 and 119.12 regarding standards of review between classified full-time civil servants. CCSC did not address the merits of Knight's constitutional argument in its appellate brief.

**{¶25}** Knight contends that classified civil service employees possess property rights in continued employment, citing *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 538-539, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Because the right to hold property is a fundamental right, he claims he has a fundamental right to his continued employment. Accordingly, because police and fire employees are afforded a de novo standard of review under R.C. 124.34 when appealing civil service decisions, and non-police and non-fire are only afforded a discretionary standard of review under R.C. 119.12, Knight contends that the statutes provide for disparate and unequal treatment of employees in classified full-time civil service positions. Knight maintains that this constitutional challenge is subject to strict scrutiny review because it affects a fundamental right.

**{¶26}** A statute's constitutionality can be challenged on its face or on the particular set of facts to which the statute has been applied. *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37, citing *Belden v. Union Cent. Life Ins. Co.*, 143 Ohio St. 329, 55 N.E.2d 629 (1944), paragraph four of the syllabus. "When a statute is challenged on its face, the challenger must demonstrate that no set of circumstances exists under which the statute would be valid." *Cleveland v. Posner*, 188 Ohio App.3d 421, 2010-Ohio-3091, 935 N.E.2d 882, ¶ 16 (8th Dist.). This facial challenge is properly raised in a declaratory judgment action and is improper in an administrative appeal.

*Cappas & Karas Invest., Inc. v. Cleveland*, 8th Dist. Cuyahoga No. 85124, 2005-Ohio-2735, ¶ 12. In this case, Knight did not file nor is he appealing from a declaratory judgment action where a facial constitutional challenge was made regarding R.C. 119.12 and 124.34. Accordingly, Knight's facial challenge will not be addressed by this court in this appeal.

{¶27} However, the constitutionality of a statute "as applied" to a particular defendant may be raised in an appeal of an administrative decision in a court of common pleas, "with the court permitting the parties to offer additional evidence." *FRC of Kamms Corner, Inc. v. Cleveland Bd. of Zoning Appeals*, 14 Ohio App.3d 372, 373, 471 N.E.2d 845 (8th Dist.1984). In this case, Knight made numerous arguments with the trial court regarding which standard of review should be applied in reviewing his administrative appeal; however, no constitutional argument was asserted, thus waiving it on appeal before this court. In so far as this court having any discretion to address an "as applied" constitutional challenge for the first time on appeal, we decline to exercise our discretion.

{¶28} The issue Knight raises on appeal about the differing standards of review for police and fire civil servants and non-police and fire civil servants is not a novel concept. The law adding the de novo standard of review for police and fire department members was amended in 1955, following the Ohio Supreme Court's decision *In re Koellner*, 160 Ohio St. 504, 117 N.E.2d 169 (1954), paragraph one of the syllabus. *See Cupps v. Toledo*, 170 Ohio St. 144, 163 N.E.2d 384 (1959) (suggesting the reason for the change

and recognizing the General Assembly's special treatment given to police and fire in administrative review). Since the 1955 amendment, the Ohio Supreme Court has repeatedly recognized the differing standards of review. *Chupka*, 28 Ohio St.3d 325, 331, 504 N.E.2d 9 (Brown, J., concurring); *Pietrick*, 142 Ohio St.3d 495, 2015-Ohio-961, 33 N.E.3d 18. Recently, in *Mallett*, 8th Dist. Cuyahoga No. 102559, 2015-Ohio-5140, this court confirmed that members of the police and fire departments are afforded de novo review, and non-police and fire civil servants are not.

**{¶29}** Accordingly, any constitutional "as applied" challenge was apparent at the time of review with the trial court and, therefore, Knight could have raised the issue below. Accordingly, Knight's third assignment of error is overruled.

### III. Employment Termination

**{¶30}** Knight contends, in his fourth assignment of error, that the trial court erred in its May 21, 2015 journal entry because the city failed to prove his employment termination was supported by the charges contained in its notice of termination of his employment.

**{¶31}** The standard of review to be applied by the court of appeals in an administrative appeal brought under either R.C. 119.12 or 2506.04 is more limited. *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000), quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984), fn. 4; *Lorain City Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260-261, 533 N.E.2d 264 (1988).

**{¶32}** The appellate review standard is whether the common pleas court abused its discretion in finding that the administrative order was or was not supported by reliable, probative, and substantial evidence. *See Jones v. Cleveland Civ. Serv. Comm.*, 8th Dist. Cuyahoga No. 103143, 2016-Ohio-3169. "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *In re C.K.*, 2d Dist. Montgomery No. 25728, 2013-Ohio-4513, ¶ 13, citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). A decision is unreasonable if there is no sound reasoning process that would support that decision. *Id.*, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶33}** When applying the abuse of discretion standard, a reviewing court may not simply substitute its own judgment for that of the trial court. *Adams v. Adams*, 3d Dist. Union No. 14-13-01, 2013-Ohio-2947, ¶ 15, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *see also Lorain City Bd. of Edn.* at 260-261 (the fact that the court of appeals might have reached a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent a lawful basis).

**{¶34}** In this case, Knight first contends that the trial court erred by finding that he had the burden of disproving the allegations and basis for termination; rather he contends that the city had the burden of proof at the trial court. Knight's assertion centers around the misunderstanding about the type of review he is afforded before the trial court in this

appeal from the CCSC. As previously discussed, Knight argues that he is afforded a de novo review of the CCSC decision. However, as previously addressed, Knight is not afforded de novo review; only whether the CCSC's decision is supported by "reliable, probative, and substantial evidence." R.C. 119.12(D). As such, there is no burden of proof, per se, rather only a deferential standard of review. *See Mallett*, 8th Dist. Cuyahoga No. 102559, 2015-Ohio-5140, at ¶ 11-12. Again, we have previously determined that the trial court applied the correct standard of review.

{¶35} Substantive to the appeal, Knight maintains that the trial court failed to determine whether reliable, probative, and substantial evidence supported his termination of employment. Specifically, he asserts that no evidence existed supporting the conclusion that (1) the homeowner's sewer connection was blocked in the street and not on her property, (2) he solicited customers in connection with Derek Mitchell, and (3) he violated any city ethic rules or policies. We disagree — the trial court's written decision clearly demonstrates that it thoroughly determined that reliable, probative, and substantial evidence supported Knight's termination.

{¶36} The pertinent facts surrounding Knight's termination involve the solicitation of sewer work and Knight's subsequent performance of such work. The homeowner was experiencing sewer backup problems in her basement. Following a call to the city, water pollution inspector Henry Maxwell responded and snaked the sewer line 45 feet from her house with no relief provided for the homeowner's problem. The homeowner testified that Maxwell indicated that the problem was likely in the street, but told her to obtain

receipts (estimates) from private companies evidencing where the blockage in the sewer was located. If the blockage was between the homeowner's cleanout connection of her sewer to the curb, the homeowner was responsible for any repair. However, if the blockage was beyond the curb and into the street, then the city would be responsible for the repair.

{¶37} The homeowner testified that she obtained multiple receipts/estimates from various companies, most indicating the blockage was on city property. As for documentary evidence, one company indicated that it snaked her sewer line 40 feet and that the blockage was in the street; thus the city's responsibility for repair. However, another estimate indicated that the blockage was 27 feet from the homeowner's cleanout connection; thus the property owner's responsibility. The homeowner called the city again and on June 30, 2009, inspector Derek Mitchell ("Mitchell") responded. According to the homeowner, Mitchell would not accept the estimates she provided, but instead told her that the main sewer line was flowing freely and thus the problem was on her property. He insisted that she use the services of Knight or she would not get a permit, would fail inspection, and would be fined. Mitchell provided the homeowner with Knight's information. According to the homeowner, she was led to believe that the city was not going to fix her sewer line.

{¶38} The homeowner testified that she called Knight to perform the repairs. According to the homeowner, Knight told her that she should not tell anyone that Mitchell referred him because it was a "conflict of interest." Before any agreement on price or

contract, Knight obtained the permit with the city to do the repair and parked his backhoe equipment in front of her house. It is undisputed that Knight had permission from his employer to perform off-duty sewer work with his own equipment. However, the homeowner testified that when Knight appeared at her house at 5:00 p.m. on July 13, 2009 to start the sewer repair, it was the first time she noticed he was employed by the city due to Knight wearing his city-issued uniform.

{¶39} There was conflicting testimony whether Knight verified the blockage before he began digging in the homeowner's tree lawn area. As he was digging, he broke the buried sewer line test tee. Testimony was provided that the test tee is an opening in the sewer system between the homeowner's cleanout connection and the street connection that allows easy access to the homeowner's sewer system to investigate and flush out clogs. If a test tee is present, it is usually indicative of prior sewer line problems. Again, there was conflicting testimony whether Knight snaked the test tee after he uncovered and broke the line to confirm whether the blockage was on the homeowner's property. Testimony was given by Cornelius Lemon who suggested the test tee was broken to guarantee payment and to prevent anyone from indicating that there was not a blockage at that particular point, and requiring the sewer to be repaired on the homeowner's property regardless.

{¶40} After the test tee was broken, Knight continued digging and subsequently ruptured the water line. According to the homeowner, when she told Knight that she was going to call the water department to turn the water off, Knight became nervous and

frantic. She stated that he grabbed her phone away from her. The homeowner testified that Knight told her there was a conflict of interest, she was not supposed to call them or mention his or Mitchell's name, and that he may get fired.

**{¶41}** Knight denied making these statements and that he touched her phone. Knight testified that he became nervous because water was backing up into her basement, which could damage the homeowner's furnace and hot-water tank, subjecting him to liability. Additionally, Knight stated that the homeowner was calling the water pollution department, rather than the water department. He testified he told her to stop calling "those people" because they were not the appropriate department to contact.

**{¶42}** After an investigation, it was discovered that the sewer blockage was in the street, two feet from the curb, and was the city's responsibility to repair. However, Knight's witnesses testified that based on the repair of the homeowner's sewer line, the problem was likely on the homeowner's property stretching into the street.

**{¶43}** Further investigation revealed that inspector Mitchell did not follow proper practice and Knight's conduct violated several city policies and practices that he should have known due to his position with the city. Moreover, it was discovered that in three or four instances in which Mitchell inspected a homeowner's sewer, Knight was the contractor who pulled the permit and performed the sewer work at these addresses. In each of these cases, Knight failed to follow protocol to have those locations inspected after he completed the work.

{¶44} Knight stated that he did not know the city had a policy prohibiting city employees from making referrals to one another. However, he admitted that he speculated that he was being referred work by city employees based on statements made by the homeowners and who made the referral. He further denied having any relationship with Mitchell or any agreement to compensate Mitchell for referrals.

{¶45} Our review of the trial court's decision and the testimony and evidence presented before the referee demonstrates that the trial court's decision upholding Knight's termination was not an abuse of discretion. The trial court noted that it was only reviewing Knight's arguments only as they pertained to the specific basis upon which the referee recommended (and the CCSC adopted) to uphold Knight's termination — "solely upon the finding that Mr. Knight's conduct in attempting to obtain money for work that should have been performed by the City at no cost to the homeowner constituted conduct unbecoming an employee in the public service in violation of the Civil Service Rule 9.10."

{¶46} As for where the homeowner's sewer connection was blocked, the trial court concluded that credible testimony was provided by the homeowner, Frank Reese, Lemon, and Ollie Shaw to support the referee's finding that Knight attempted to obtain money for services that should have been performed by the city at no cost.

{¶47} Knight contends on appeal that the record does not support this finding but rather demonstrates that the breakage was on the homeowner's property. In support, he points to the estimate the homeowner received by Roto-Rooter that said the blockage was

27 feet from the main clean out in her basement; and his own expert's testimony that it was possible that the blockage was in the tree lawn of the homeowner's property and thus her responsibility.

{¶48} The question of where the blockage was located in the homeowner's sewer connection is a question of fact, which this court is precluded from considering under our limited scope of review. However, the trial court, in its review of the record, noted the conflicting testimony and evidence but found that the referee ultimately decided any question of credibility in favor of the city and homeowner and against Knight. The trial court accepted the referee's findings on credibility, noting that the referee was in the best position to making this credibility assessment. The court further noted that the entirety of the record supports the referee's conclusion. Accordingly, we find that the trial court's decision was not arbitrary, but rather in accordance with the law that credibility considerations are left primarily for the trier of fact; here, the referee.

{¶49} As for whether Knight and Mitchell solicited customers, the trial court determined that competent, credible, and substantial evidence existed supporting the CCSC's determination that Knight was part of the scheme to solicit work for personal gain. While it is true that the homeowner contacted Knight at the insistence of Mitchell, and Knight did not make any initial contact or solicitation of the homeowner, the record is clear that Knight received sewer referrals from Mitchell on a regular basis. Furthermore, the homeowner testified that Knight became very irritated after he found out that she contacted the city because she was not supposed to disclose their names. It was

reasonable to conclude that if Knight was abiding by all policies and procedures, he would not have reacted in the manner the homeowner testified to, including taking her telephone from her when she tried to call the city's sewer department. We find no abuse of discretion in this finding.

{¶50} Furthermore, the record indicates that during its investigation, the city discovered that of the seven repair jobs Knight performed as a private contractor in the past year, three or four of those jobs were directly linked to customer sewer complaints investigated by Mitchell. Furthermore, as the trial court pointed out, Knight's failure to obtain inspections after he completed those sewer repairs is an indication that Knight was conscious of wrongdoing and did not want to draw attention to the inappropriate referral relationship between he and Mitchell by ordering the inspection.

{¶51} The trial court recognized the severe result of termination of Knight from employment, but found that the city had consistently applied its policy of termination for conduct unbecoming an employee in the public service in circumstances where an employee had been found using their position at the city for personal gain. Therefore, the trial court found that termination was not an arbitrary action taken by the city.

{¶52} Based on our limited scope of review, the record demonstrates that the trial court did not abuse its discretion in affirming the CCSC's decision to terminate Knight where the trial court found that CCSC's decision was supported by competent, credible, and substantial evidence from the record. Knight's fourth assignment of error is overruled.

IV. Determination of Findings of Fact

**{¶53}** In his fifth assignment of error, Knight contends that the trial court erred in its May 21, 2015 journal entry and judgment by failing to find that CCSC's August 27, 2010 published determination to uphold the city's termination of his employment contains no findings of fact or conclusions of law, contrary to the mandate of CCSC Rule 9.70, and thus denied him due process of law. Specifically, Knight contends that the referee's report and recommendation does not include conclusions of law; and this deficiency carried over to the CCSC when it adopted the referee's report.

**{¶54}** In this case, the CCSC specifically accepted and adopted the referee's findings and recommendation. The referee's report contained a "facts" section, followed by a "discussion" section. In that section, the referee stated,

> [t]he City charged the appellant for violation of the City's Ethics Policy and of a number of civil service rules. Without dwelling on each of these allegations, it is apparent that the conduct of this employee who attempted to obtain money for a service that should have been performed by the City at no cost constituted "conduct unbecoming an employee in the public service." The record, subsequent investigation by the Division of Water Pollution Control, and the preliminary hearing reports were that the decision was for dismissal. Accordingly, [the referee] recommend[s] denial of the appeal of this discharge.

**{¶55}** CCSC Rule 9.70, titled "Rules of Procedure for Appeal Hearings Before the Commission," provides in relevant part,

> [t]he Commission shall announce its decision after reviewing all of the testimony, exhibits, briefs and arguments of counsel. The decision of the Commission shall be final upon its *enactment of written* Findings of Fact

and Conclusions of Law, which shall be voted upon and enacted by the majority of the Commission that had voted to sustain the prevailing party's position. Prior to approval of any proposed Findings of Fact and Conclusions of Law, such majority may make any changes thereto which it deems appropriate. The decisions of the Commission are final upon adoption of its minutes by the Commission. (Emphasis added.)

**{¶56}** CCSC Rule 9.70 requires *enactment* of written findings of fact and conclusions of law, whereas CCSC Rule 9.40 requires that the referee *shall* submit findings of fact and conclusions of law and recommendations. Therefore, when viewing the two rules together, the CCSC's action of enactment is analogous to a trial court's adoption of a magistrate's decision. Pursuant to Civ.R. 53, a trial court may "adopt" a magistrate's decision without issuing separate findings of fact and conclusions of law, so long as it is a separate and distinct instrument granting relief on the issues originally submitted to the court. *Secy. of Veteran's Affairs v. Anderson*, 2014-Ohio-3493, 17 N.E.2d 1202, ¶ 8 (8th Dist.), citing *Flagstar Bank, FSB v. Moore*, 8th Dist. Cuyahoga No. 91145, 2008-Ohio-6163.

**{¶57}** Accordingly, the trial court's conclusion that "nothing in the rules prohibit the CCSC from adopting the Referee's findings as its own" was not unreasonable or arbitrary. The trial court, after reviewing the record and noting the underlying purpose of due process and administrative review is to ensure the adverse party has notice of the

legal grounds and basis for termination, concluded that the adoption of the report was sufficient to comply with CCSC Rule 9.70.   We agree.

{¶58}   The purpose of findings of fact and legal conclusions is to enable a reviewing authority to determine the existence of assigned errors and to afford the adverse party adequate due process.  *See, e.g., Gray v. Gray*, 8th Dist. Cuyahoga No. 95532, 2011-Ohio-4091 (discussing Civ.R. 52 and purpose of findings of fact and conclusions of law).   A trial court need not discuss every issue that the party raises or engage in an elaborate and lengthy discussion in its findings of fact and conclusions of law; its findings must be sufficiently comprehensive and pertinent to the issues to form a basis upon which the evidence supports the conclusion.   *State v. Calhoun*, 86 Ohio St.3d 279, 291-292, 714 N.E.2d 905 (1999).

{¶59} In this case, Knight does not specify or identify how he was denied due process of law.   Rather, the record demonstrates that he was afforded a right to be heard and was notified of all proceedings.   As noted by the trial court, both Knight and the reviewing court were given notice of the essential facts and the legal grounds for the administrative action taken by the CCSC.   The city held a predisciplinary conference for Knight, which he received notice of and participated in with union representation. Knight was subsequently served with a termination letter setting forth each rule he was charged with violating and discussed in detail the factual allegations against him. Finally, Knight was provided an opportunity to appeal, which he did, and was subsequently afforded a hearing on that appeal where he was represented by counsel.

{¶60} Furthermore, a review of the record demonstrates that at no time did Knight challenge any deficiency in the referee's report or denial of due process therefrom before the civil service commission. Knight did not challenge any alleged deficiency in the referee's report before the commission during its appeal hearing. Therefore, it can be assumed that Knight was not prejudiced and that he was fully apprised of the referee's decision, recommendation, and the basis for such recommendation. The first time Knight challenged the referee's report was with the trial court after Knight's termination was upheld by the CCSC. The appropriate time to cure any alleged deficiency or denial of due process was with the civil service commission. Complaining with the trial court and now on appeal about a procedure or technicality — "discussion" versus "conclusions of law" — that could have been remedied below is untimely.

{¶61} Therefore, the trial court did not abuse its discretion in finding that the referee's report and subsequent CCSC enactment of the referee's report were sufficient to afford Knight due process under the law.

{¶62} Accordingly, Knight's fifth assignment of error is overruled.

{¶63} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR